## Branch T. Masterson v. John Little et al.

### No. 2764.

1. **Statute of Frauds — Statute of Conveyances.**—A purchaser of land may rely upon the statute of frauds to invalidate a parol contract for its conveyance made between his vendor and one claiming adversely under such contract. Both under the statute of frauds.(Rev. Stats., art. 2464) and the statute of conveyances (Rev. Stats., art. 548) a defendant in trespass to try title may interpose as a defense the fact that the plaintiff's claim to the land, derived from a common vendor, is invalid because founded on a contract which was not reduced to writing. See opinion for facts.

2. **Statute of Frauds.**—The words, "any contract for the sale of real estate," as used in the statute relating to frauds and fraudulent conveyances (Rev. Stats., art. 2464), include every agreement by which one promises to alienate an existing interest in land, upon a consideration either good or valuable. A contract to convey land in consideration of labor or services to be rendered is within the statute of frauds.

3. **Estoppel — Parol Declarations.**—The mere oral promise made by a third party to one whose title to land is involved in a suit pending, that if the promissor is not joined in the suit he will hold himself as much bound by the judgment as though he were a party, will not render the judgment binding by estoppel against the party thus promising, when it is apparent that no judgment could have been rendered against him if as a party to the proceeding he had presented his legal defenses.

4. **Lis Pendens—Judgment.**—Title vests on the delivery of a deed to the purchaser, and not from the date of its registration; hence a judgment against the vendor rendered in a suit brought after he has parted with title, but before the registration of the deed, can not affect the purchaser who was not a party to the suit, nor can his title be affected by equities between the parties to such suit, to which he is not subject.

5. **Pleading—Fraud.**—In trespass to try title fraud between the plaintiff and a common vendor in the conveyance of title can not be set up as a defense without making such vendor a party.

6. **Jurisdiction.**— Jurisdiction over a nonresident of Texas against whom a personal judgment is sought can not be acquired in Texas by personal service made in another State.

7. **Agreement of Parties.**—An agreement between plaintiff and defendant that a common vendor should be made a party to the action, to contest with defendant his right to land, will not be construed to preclude the plaintiff from prosecuting his suit to judgment when the common vendor is a nonresident, who does not make himself a

party, and when the court has no power to acquire compulsory jurisdiction over him. See opinion for facts.

8.   **Practice.**—It is not error for the trial judge to refuse to sign a bill of exceptions to his action in the trial of a cause which action appears otherwise in the record.

APPEAL from Calhoun.   Tried below before Hon. H. Clay Pleasants. The opinion states the case.

*A. B. Peticolas* and *Branch T. Masterson,* for appellant.—1.   The statute of frauds (Sayles, art. 2464) provides that "no action shall be brought in any of the courts upon any contract for the sale of real estate \* \* \*   unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith."   From this it follows that such verbal contract is voidable and not void, and that no person except a party to be charged thereby can complain of the contract or plead his exemption from suit by reason of this statute.   The right to plead this statute is given to a party liable to be charged upon the verbal contract, and to no other person, and the verbal contract remains valid and binding, unless such a plea is interposed by the party to be charged.   Cahil v. Biglow, 18 Peck, 369; Bohannon v. Parr, 6 Dana, 194.   No one can plead the statute of frauds but a party to the contract sought to be avoided. Cowan v. Adams, 10 Me., 374; Lavindar v. Hall, 60 Ala., 214; Rickards v. Cunningham, 10 Neb., 417; Davis v. Inscor, 84 N. C., 396; Tucker v. Swayne, 71 Ind., 562; Cooper v. Hornby, 71 Ala., 62; Wright v. Jones, 105 Ind., 17; Savage v. Lee, 101 Ind., 514; Carl v. Peters Box Co., 87 Ind., 531; Dixon v. Duke, 85 Ind., 434; Chicago Dock Co. v. Kinzee, 49 Ill., 289; Ames v. Jackson, 115 Mass., 508; Chaffe v. Benoit, 60 Miss., 34; Seminonds v. Moore, 100 N. Y., 140; Houser v. Lamont, 55 Pa. St., 311.   Contracts not void but voidable only.   3 Pars. on Con., 57; Gillespie v. Battle, 15 Ala., 276.

2.   In this case plaintiff John Little bases his right to a recovery of the lands sued for, not upon any alleged invalidity of the contract between Masterson and William Little, but solely upon his allegation that he was an innocent purchaser without notice of Masterson's title, wherefore he is concluded by his pleadings from now setting up a new and distinct ground of attack, to which Masterson was not called to answer by the petition.   A plaintiff in trespass to try title need not set up his title specifically, but if he does he is bound by his pleadings, and can prove no other title than that alleged.   In this case John Little has recovered, not upon the strength of his own title as alleged, but upon the asserted weakness of his adversary's title.   Edwards v. Barwise, 69 Texas, 84; Turner v. Ferguson, 39 Texas, 505; Custard v. Musgrove, 47 Texas, 217.

3.   The statute does not require the contract to be signed by the party to be charged, but only some memorandum of it.   It is not necessary that

it should be contained in a single document, nor that every document referring to the matter should be signed, and if the memorandum be such as may be made clear by attendant circumstances, and there has been performance under the contract, those circumstances may be proved. Tested by this rule, the memorandum set up in the answer seems sufficient. James v. Fulcrod, 5 Texas, 512; Miller v. Roberts, 18 Texas, 19; Gardner v. Rundell, 70 Texas, 456; Buckwith v. Talbot, 95 U. S., 289; Tel. Co. v. Railway, 86 Ill., 246; Neaves v. Mining Co., 90 N. C., 412.

4.   There is a distinction clearly defined in law between a parol contract to recover lands for another in whom the title has already vested and a parol contract to acquire lands from the State, by procuring locations, surveys, or patents from the State, in which the employer previously had no title.   In the first case the statute applies, but in the second it is held to be a joint acquisition of lands for the benefit of both the employer and the employed, and the statute does not apply.   Sprague v. Haines, 68 Texas, 215; Reed v. Howard, 71 Texas, 204; Watkins v. Gilkerson, 10 Texas, 340; Gardner v. Rundell, 70 Texas, 453; Gibbons v. Bell, 45 Texas, 418; James v. Drake, 39 Texas, 143; Evans v. Hardeman, 15 Texas, 480.

5.   If John Little made representations to Masterson touching his suit against William Little then pending in Galveston, and agreed with Masterson to abide by and respect the judgment that might be rendered in that case, with the intention that Masterson should act on these representations, and directly or indirectly expressed a desire not to be made a party to that suit, and asserted no adverse claim to this land Masterson claimed in said suit, and John Little knew what Masterson claimed in said suit, and in consequence of these promises and representations, and relying upon them, Masterson was induced to take an action which but for such promises and representations he would not have taken (to-wit, not to make John Little a party to said suit), then all the elements of an estoppel *in pais* exist, and John Little will not be heard now to collaterally question the validity of that judgment nor the title acquired under it.   Mayer v. Ramsey, 46 Texas, 371; Page v. Arnim, 29 Texas, 52; Burleson v. Burleson, 28 Texas, 415; Love v. Barbour, 17 Texas, 312; Scoby v. Sweatt, 28 Texas, 731; Weinstein v. Nat. Bank, 69 Texas, 38; Bryan v. Rainney, 8 Cal., 461; Saunders v. Balance, 2 Jones' Eq., 322.

6.   As to third parties without notice, a deed takes effect not from its date, but from the date of record; and John Little's deeds to St. Joseph and Mustang Island lands not being recorded until after the suit was filed against William Little, these deeds, if valid for any purpose as against Masterson, only took effect as if executed on the dates of their record, and that being after the suit was filed against William Little, John Little occupies the position of a purchaser *pendente lite* and is bound by the judgment, and all matters decided in that judgment are *res adjudicata* as to

him.   Gillbeau v. Mays, 15 Texas, 415; Crosby v. Huston, 1 Texas, 237; Grumbles v. Sneed, 22 Texas, 575.

7.   At the very foundation of the plea of innocent purchaser for a valuable consideration without notice, and as the great and controlling reason for allowing it to prevail, lies the doctrine of compensation for money honestly paid out.   The valuable consideration must be shown, and only to the extent that a plaintiff or defendant invoking the aid of this plea can show that he would be damaged by denying its protection to him, is he protected under it.   If he has agreed to pay $33,500 for the land and has only paid $12,000 before he becomes aware of a better title than his, he pays the remainder of the purchase money at his peril.   He can only claim to be an innocent purchaser to the extent of the purchase money paid.   In this case John Little could not be injured by granting to Masterson the relief he asks, since he has not paid for the land and has secured himself beyond question against loss by giving non-negotiable notes for the unpaid residue; he is a stakeholder between William Little and Masterson, not to be affected pecuniarily by the success of either. Rawles v. Perkey, 50 Texas, 311; Dufpley v. Frenaye, 3 Stud. & Port., 215; Story's Eq., sec. 64a.

8.   If John Little's deeds were void, he had no right to recover against any defendant in possession, whether he had title or not; and if the deeds were made with intent to defraud, and John Little knew it, or by the use of reasonable diligence might have known it, then they were void as to Masterson, and the judgment was erroneous.   Edrington v. Rogers, 15 Texas, 195; Humphries v. Freeman, 22 Texas, 50–52; Traylor v. Townsend, 61 Texas, 146; Wright v. Linn, 16 Texas, 42–45; Bacon v. O'Connor, 25 Texas, 225; Evans v. Templeton, 69 Texas, 377.

9.   When under such an agreement it is provided that unless a third party, who is thereafter to be made a party defendant to the suit, shall defeat the original defendant upon his title to land, then that title is to be recognized as good by the plaintiff, and said third party is made a party by appropriate process, and such third party thus brought in fails to defeat the original defendant, in such case the agreement stands in full force, and the plaintiff can not himself take any steps to defeat the original defendant except those provided for in the agreement.

*Stockdale & Proctor,* and *Glass, Callender & Proctor,* for appellees.— 1.  Wm. Little's title was in John Little.  An agreement not enforceable against the vendor is not enforceable against the vendee, with or without notice.   The advantage of the protection of the statute of frauds is for a party and his privies.   Chicago Dock Co. v. Kinzee, 49 Ill., 289; Rickards v. Cunningham, 10 Neb., 417; Cahill v. Bigelow, 18 Pick., 369; Browne on Stat. of Frauds, 128; 1 Greenl. on Ev., 189; Bouv. Law Dic., 465.

2.   The deeds from Wm. Little to John Little took effect from date of execution and delivery, not from date of registration.  Tuttle v. Turner, 28 Texas, 759; 3 Pome. Eq., 1162.

3.   *Res adjudicata* does not apply.  The court in this case passed upon the merits of a case different from the case of Masterson v. Little, in District Court of Galveston County, and between different parties. No attempt was made to decide any matters whatever between Masterson and William Little, said William Little not being a party to this suit, as shown by the court's judgment.  Philipowski v. Spencer, 63 Texas, 604; 7 Rob. Prac., 221, 222, 40.  On William Little not being party. Hart v. Sansom, 110 U. S., 151.

4.   If it appears that the defendant was at the time of service without the territorial limits of the court, and that he never appeared in the action, the presumption of jurisdiction over his person ceases, and the burden is upon the party who claims benefit or protection of said decree.   Stewart v. Anderson, 70 Texas, 593; Galpin v. Page, 18 Wall., 364.

5.   The decree of said District Court of Galveston County, even if binding on William Little, can not affect John Little, who was not a party to said suit, and who purchased long prior to its institution.

6.   There was no written memorandum of contract signed by William Little, or by some party by him lawfully authorized, pleaded by appellant, that would satisfy the requirements of the statute of frauds, but on the contrary his pleadings show that appellant proposed a contract in writing which William Little never executed.

7.   The memorandum, to satisfy the statute, must contain the whole contract and must be certain.  If consisting of several papers referring to each other, each paper is a material part of the contract.   Browne on Stat. of Frauds, sec. 350; 8 Am. and Eng. Enc. of Law, pp. 711–14.

8.   The alleged contract between Masterson and Wm. Little was within the statute of frauds.   Where land is located, surveyed, and ready for patent, a parol agreement to convey an interest in same to one who procures patent thereon is not a contract for joint acquisition of lands, but is within the statute.  Aiken v. Hale & McDonald, 1 Posey's U. C., 319; Sprague v. Haines, 68 Texas, 216.

9.   Appellant's answer showed no estoppel on said John Little by virtue of statements and actions of the said John Little, because said answer shows no additional injury caused said Masterson, and no change in the position of said Masterson induced by reliance thereupon.   2 Pome. Eq., 807–813; 6 Wait's Act. and Def., 681; Bisph. Eq., 350.

10.   The court properly held it had acquired no jurisdiction over William Little.   Stewart v. Anderson, 70 Texas, 588; Pennoyer v. Neff, 95 U. S., 714.

HENRY, ASSOCIATE JUSTICE.—The following statement of the plead-
ings is taken from the brief of appellant's counsel:

"On the 23d day of February, 1884, John Little sued appellant and
Edwin and A. C. Hawes in the District Court of Calhoun County, alleg-
ing that he was the owner of certain lands on Matagorda Island in said
county, describing them, and alleging an ouster by the defendants.

"Little says that he was seized and possessed of said land by deed from
William Little, dated November 24, 1883, and recorded in said county on
December 1, 1883, and that defendants set up a claim thereto by reason
of a pretended contract of Masterson with William Little, and a pretended
judgment of partition rendered in the District Court of Galveston County
in the suit of Masterson v. William Little. That petitioner was not a
party to said suit, and purchased said lands on the day of the date of his
deeds, and paid therefor a full and valuable consideration anterior to said
suit and decree of said partition, and without any knowledge or notice,
actual or constructive, of any contract of the said Masterson with the said
William Little, whereby any title or interest in said land was vested in or
accrued to said Masterson, and long before any interest or right thereto
was claimed or asserted or sought to be enforced by the said Masterson."

Masterson answered with a general denial and the plea of "not guilty;"
and further answering alleged in substance that one William Little had
contracts with the owners of the land certificates by virtue of which the
lands in controversy had then been located, under which he claimed that
in consideration of his services in perfecting said location, having surveys
made and returned to the General Land Office, and obtaining patents from
the State, he would become entitled to one-half interest in said lands, the
title to which might be so obtained or acquired under his said contracts,
and he claimed that one-half of all expenses incurred by him should be
paid by said owners of said certificates under his locative contracts afore-
said. That said William Little had had charge of said locations for a
long period, to-wit, about thirty years, and had failed to obtain patents
on said surveys, and the ownership of said certificates was in said par-
ties who as owners thereof contracted for the location thereof as afore-
said, and the legal title to said land was then in the State. That said
William Little had been sued by the various owners of said certificates
for the purpose of recovering from him said certificates or their value
on account of his failure to comply with his said contracts. That
said William Little employed this defendant to examine into all of said
matters, and to aid him in acquiring title to said land, and represent him
in said suits, and to obtain title for said William Little under said locative
contracts by perfecting said locations into patents, and thus acquire title
to one-half of said land, and to establish and enforce a lien on the other
half for one-half of the money expended by said Little; and said Lit-
tle agreed to convey to this defendant one-third of all lands so located

o

on said three islands, the titles to which should be obtained or established or acquired under said locative contracts aforesaid, and all titles so acquired should be for the joint benefit of said William Little and this defendant, two-thirds to said William Little and one-third to this defendant, and that defendant should also receive one-third of the money that might be recovered or obtained from the owners of said land certificates. That defendant performed his part of said contract, bestowing upon the work much time and labor. That defendant succeeded in recovering a decree in said cause, establishing said William Little's right to one-half of said lands under said locative contracts, and establishing a lien on the shares of the different owners for their respective pro rata portion of the expenses incurred by said Little, amounting in the aggregate to the sum of three thousand five hundred and seventy-seven dollars and ninety-two cents, and a decree establishing and foreclosing a lien on the shares or portions owned by said defendants, respectively, for the respective amounts so adjudged to be due by them, which said equitable lien accrued and was created in the carrying out of said locating contracts in the course of acquiring the title from the State for the lands so located. That under said decree a large part of said lands adjudged to the owners of said certificates and locations was sold by the master in chancery in said suit to satisfy the amount due by them as aforesaid, and this defendant bought said lands at said sale made by said master in chancery in the name of said William Little for the joint use and benefit of said Little and this defendant, two-thirds for said William Little and one-third for this defendant, and paid therefor by crediting the amount of his bids on said decree; and said sale was duly confirmed and a deed ordered to be executed by said master in chancery conveying said land to said Little, which deed was so executed and delivered to this defendant. That this defendant, in the further carrying out of said contract, made several trips to Austin, Texas, at the repeated and earnest request of said William Little, to acquire title to said lands by obtaining patents on the unpatented parts of said islands, which said William Little had been unable to obtain, and by diligent effort in the proper preparation and presentation of said claim and the question of law connected therewith, this defendant succeeded in obtaining a favorable ruling and the issuance of forty-five patents for lands on said islands, thereby acquiring title to said land from the State of Texas for the joint benefit of defendant and said Little, in the proportion of two-thirds to said Little and one-third for defendant, and said patents were delivered by the State to this defendant. That this defendant held, and still holds the title deeds and patents aforesaid, and the same have never been delivered to said William Little otherwise than through the delivery to this defendant, which delivery was for and enured to the joint benefit of said William Little and this defendant in the joint acquisition of said lands as afore-

said. That said fee was wholly contingent, and was a reasonable compensation for the services rendered by this defendant as aforesaid. This defendant further alleges that in 1882 he prepared and sent to the said William Little, at Austin, Texas, a contract in writing to be signed by him (a copy in substance of said contract is hereto attached and marked Exhibit B, and made a part hereof), which contract was in conformity with the terms agreed on, and said William Little acknowledged receipt of said contract, and wrote to defendant that there would be no trouble with defendant concerning his fee or the interest to which defendant was entitled; and said Little did not in any manner dispute or question the correctness of said contract, but on the contrary, at various times thereafter, urged this defendant to proceed with his work, and acquire and obtain complete titles to said lands as aforesaid, and this defendant continued to render services in good faith under his said contract. That in the spring of 1883 the said William Little, not having returned to Texas, defendant wrote to him at Newark, New Jersey, requesting him to sign, acknowledge, and return said contract for his contingent fee of one-third interest in said lands, and in reply to said letter said William Little, on April 13, 1883, wrote a letter to this defendant, wherein he promised and agreed to attend to it on his return to Texas, giving as his reason for not then doing so that he had left said contract with his papers in Austin, Texas, and in said letter in no manner questioned or disputed the correctness of said contract or his obligations thereunder. That this defendant continued to render services under said contract until the work was completed and titles acquired and obtained as aforesaid. That this defendant demanded of the said William Little a deed for his one-third of said land, and a partition thereof, and said Little failing to execute said deed, this defendant, on the 7th day of January, 1884, filed a suit against said William Little for partition of said land, which suit was filed in the District Court of Galveston County, No. 11,762; and said William Little being duly cited in said cause, and the same coming on to be heard, a decree was rendered therein for partition, and commissioners duly appointed thereunder, and said commissioners made partition of said land in conformity with said decree, awarding two-thirds thereof to said William Little and one-third to this defendant, the parts awarded to this defendant being lots No. 1 on Matagorda, No. 1 on St. Joseph, and No. 1 on Mustang Islands, as shown in Exhibit A. This defendant further represents that said lot No. 1 on Matagorda Island includes the land plaintiff is wrongfully claiming in this suit. That said decree is a final decree and in full force, and has never been appealed from or in any manner disputed by said William Little nor by plaintiff until the filing of this suit. That in said suit No. 11,762 the prayer of the petition was that plaintiff should have his one-third of said lands set off to him in severalty; but that if by reason of the failure of said defendant to execute

the contract for fees or from any cause said defendant could not obtain said partition, then he should have judgment for the reasonable value of his services, whereby it became and was necessary for said court to determine whether said contract was a good and valid contract or not, and by its decrees aforesaid said court adjudged that said contract was not within the statute of frauds, but was in all respects valid and binding.

This defendant further says that said John Little was a purchaser of a portion of the land sold under the decree of the United States Circuit Court aforesaid, and was in the office of this defendant and consulted him about said lands, and had full knowledge of the fact of this defendant's employment by said William Little as far back as 1882, and knew of the services rendered by defendant to William Little, and that this defendant had not received his compensation therefor; and in 1883, prior to said pretended purchases by plaintiff, he, the plaintiff, was fully informed of the fact that this defendant claimed one-third of said land as his interest therein for his said services rendered, and that he held possession of said patents, deeds, and title papers, and that said patents and deed from the master in chancery had never been delivered to said William Little, and that this defendant refused to deliver the same until he should receive a deed for his one-third of said land acquired on joint account as aforesaid.

Defendant further says that said John Little obtained from said William Little deeds for the whole of said lands on all three islands, including defendant's one-third interest, and that said deeds recite payment of only a part of the purchase money; that nearly two-thirds of the purchase money remained unpaid; that said John Little contracted to pay therefor. That said pretended deeds were executed by said William Little for the purpose of defrauding this defendant out of his one-third of said land, and said land constituted all of the property of said Little in the State of Texas, as far as known to defendant; and that said John Little, who is a nephew of said William Little, accepted said deeds with full knowledge of said intention. That said John Little, after said pretended purchase, came to defendant as representing his uncle William Little as agent, to make a settlement, and made no claim to said property in his own right, but said that his uncle ought in good faith to carry out his said contract with this defendant, and that he had so advised him; and after the institution of said suit by this defendant against the said William Little for partition, and to have defendant's share of said land set apart to him, the said John Little represented to this defendant that he did not want to be a party to said suit, or any litigation concerning said lands, and that when this defendant established his claim in said suit against William Little, that he, the said John Little, would not dispute it. That said John Little was in Galveston and was fully advised of the pendency of said partition suit before said partition was

made, and made no objection to said partition, and in no manner disputed this defendant's rights thereunder, but assured this defendant that whatever right defendant established against said William Little would not be in any manner disputed or contested by him. That this defendant, acting and relying on said representation, did not make said John Little a party to said proceeding or suit, and said John Little recognized said decree as binding upon him, and applied to this defendant after said partition to purchase his (defendant's) interest on Matagorda Island, and he and this defendant not agreeing upon terms of sale, this defendant sold all of those tracts on Matagorda Island set off to him in said partition suit to his codefendant E. Hawes.

This defendant further says that at the time said partition suit was instituted, to-wit, on the 7th day of January, 1884, he, this defendant, had no actual notice or information that said William Little had executed said deeds or any of them; that John Little concealed the fact from defendant until after said suit was filed. That said deeds are all dated and executed on the 24th day of November, 1883; and thereafter, on the 27th day of November, 1883, he came to see this defendant as agent for his uncle, William Little, to make a settlement with defendant concerning said lands, and made no claim to any of said lands in his own right, and did not disclose that he held deeds from his said uncle therefor, or for any part thereof. That the only deed recorded by said John Little prior to the filing of defendant's partition suit was the deed for lands on Matagorda Island. That in said decree in said partition suit No. 11,762 there was partitioned and set off to this defendant lands in addition to those sued for by plaintiff herein, some situated on Matagorda Island, some on Mustang Island, and some on St. Joseph Island. That at the same time said decree set off to William Little his two-thirds of the lands on said islands—that at the same time, and as one transaction, said William Little executed three deeds, one for the lands on Matagorda Island, one for the lands on Mustang Island, and one for the lands on St. Joseph Island, purporting to convey to the said John Little all of the lands situated on all three of said islands, including all of said lands set off in partition to this defendant as aforesaid. For a full description of said lands on all of said islands, reference is made to Exhibit A, hereto attached. That the said John Little paid but little more than one-third of the aggregate amount that he, said John Little, undertook upon certain conditions to pay to the said William Little therefor. That for the excess over said cash payment John Little did not give any consideration, or if any, nothing more than a non-negotiable obligation, which he has not paid, and which he can not in law be required to pay; and the superior title to said property was in said William Little at the time said suit was filed and said decree was rendered, and the said decree in said cause was binding upon said superior title and all right that said

William Little had or held in said land, and this defendant having established in said decree his right as against William Little, he, this defendant, is subrogated to all of the rights of said William Little in and to said land to the extent sufficient to satisfy said one-third thereof so set off to this defendant and to protect him therein. That said deeds for lands on Mustang and St. Joseph islands were not recorded until after said partition suit was filed, and this defendant had no notice, knowledge, or information of the execution of any of said deeds at the time said suit was filed by him against said William Little; and this defendant did not know, believe, or have any reason to believe, from the acts of any of the parties or otherwise, that said deeds had been executed, or that John Little claimed any interest in said land; and this defendant says that said deeds as to him had no force or validity until the dates of their record, subsequent to the filing of the said partition suit, and said decree therein is *res adjudicata* both as to said William Little and said John Little, and the matters therein adjudged can not again be contested by them or either of them.

This defendant further says that all of said deeds from said William Little to said John Little being executed with intent on the part of said William Little to defraud this defendant out of his interest in said lands, and said John Little having accepted said deeds with full knowledge and notice of said intent, and that the necessary consequence of said conveyance, if valid, as against this defendant would be to defraud him of his said interests in said lands, said deeds are and were void as to this defendant. That the said John Little has by virtue of said pretended deeds from William Little taken possession of all the lands on Mustang and St. Joseph islands that in said partition suit No. 11,762 were awarded to this defendant, and also of all the lands on Matagorda Island awarded this defendant, except that part sold by defendant to E. Hawes, and has ousted defendant therefrom, contrary to law. That said deeds from William Little to John Little constitute a cloud over this defendant's title to the lands awarded him on all of said islands; that all of said lands on all of said islands being partitioned in one decree by virtue of one right, and all of John Little's right adverse to this defendant being acquired at one time and as parts of one transaction between him and said William Little, it is necessary in order to do complete justice herein that the court shall inquire into and determine the rights of all parties to the suit to all of said lands so partitioned in said decree in said suit No. 11,762. Defendant says that said partition is and was fair and just to all parties, and the enforcement thereof herein will not wrong or injure in any manner any person in his legal or equitable rights, and will avoid a multiplicity of suits concerning the same subject matter between the same parties. That plaintiff John Little has a perfect defense against the unpaid purchase money due by him to William Little in the event

that the interests of this defendant in said lands as awarded to him in the District Court of Galveston County in said suit No. 11,762 are recognized and enforced, and being by law only protected as an innocent purchaser to the extent of the purchase money by him paid, he is not and can not be injured by the enforcement of the rights of this defendant.

This defendant further says that after the filing of this suit, and while the same was in progress, and all the defendants had answered therein, this defendant and plaintiff John Little and defendants E. Hawes and A. C. Hawes signed and executed a contract and agreement concerning lands in litigation in this cause, a substantial copy of which agreement and contract is hereto attached and made a part hereof, marked Exhibit C. That on the same day this defendant and the plaintiff John Little made and entered into a contract and agreement concerning lands in litigation in this suit, a substantial copy of which is hereto attached and made a part hereof, marked Exhibit D. That said agreement marked C, among other things, provides that said William Little shall be made a party herein; that said John Little shall have and receive title to certain lands therein specified, whether the title of said defendants shall be defeated or maintained, and defendant Masterson or his vendee E. Hawes is to have and receive titles to certain lands, as in said agreement specified, whether said title of said defendant is maintained or defeated. This defendant further says that in and by said contract marked Exhibit D it is agreed by and between the parties thereto that in the event that said William Little shall fail to defeat said Masterson's title to the land on Mustang Island in said exhibit described, said defendant is to convey the same to said John Little at the price specified in said exhibit, and said John Little binds himself to purchase the same from this defendant, as set out in said exhibit, and is given the right therein to take possession of said land at once, with consent of said Masterson, and to hold the same subject to the decision of this cause as between William Little and this defendant. That by these two agreements it was provided that in this suit Masterson's right to all of the land awarded to him in the decree of partition in said cause No. 11,762 should be brought into the suit; that William Little should be made a party by the plaintiff; and that Masterson's title should be recognized by said John Little, unless said William Little should defeat said Masterson's right, and that thereby said John Little is now estopped from contesting the right of said Masterson to the lands awarded to said Masterson.

Attached to the answer were two agreements made during the pendency of the suit, one of them signed by all of the parties, by which, among other things, it was stipulated, " that the pleadings in said cause shall be so amended as to set up the claim of defendant Masterson to all the land awarded to him in the decree of partition between Branch T. Masterson and William Little, rendered in the District Court of Galveston County in cause No. —, Branch T. Masterson v. William Little. That

said William Little, who conveyed to John Little, shall be made a party to this suit. That in the event that on the final decision in said cause the title of Branch T. Masterson and Edwin Hawes or A. C. Hawes shall be maintained, then said John Little agrees to pay said Masterson one dollar and seventy-five cents per acre, and interest thereon at eight per cent per annum from the date of said Masterson's conveyance to Edwin Hawes to the date of purchase, for all the following surveys," etc.

The other one, which was signed by John Little and the defendant Masterson only, reads as follows:

"*State of Texas, County of Victoria.*—This agreement, made and entered into by and between John Little and Branch T. Masterson, witnesseth: That whereas Branch T. Masterson recovered in the District Court of Galveston County, in the case of Branch T. Masterson v. William Little, a decree for three thousand two hundred acres of land on Mustang Island, for a description of which reference is made to said decree, being in cause No. 11,762, and John Little holds a deed from William Little for all the land on Mustang Island described in said decree, including the part therein decreed to Masterson, for which deed John Little paid part cash and gave William Little notes that are not negotiable for the balance; and whereas a suit is now pending in Calhoun County, wherein John Little is plaintiff and Branch T. Masterson and others are defendants, and in that suit the plaintiff is to make William Little a party: Now it is agreed that if William Little shall fail in said suit to defeat Masterson's title to said land on Mustang Island, awarded to Masterson in said decree, then John Little agrees to pay to said Masterson one dollar per acre, and eight per cent interest per annum from this date, for all of said land awarded to Masterson situated on Mustang Island, it being understood that if any part of said land has been washed off by the gulf the part so washed away is not to be paid for; the payment to be made in Galveston, Texas; and Masterson agrees to sell to said John Little said land at said price, and it is agreed that said John Little has the right to take possession of said land at once with consent of Masterson, which consent is hereby given, and he shall hold the same subject to the future decision of the cause now pending between the parties hereto, and the perfect performance of this agreement.

"INDIANOLA, November 10, 1885.

    [Signed]                       "JOHN LITTLE,

    [Signed]                       "BRANCH T. MASTERSON."

After defendant Masterson had filed his answer, the plaintiff filed a supplemental petition, in which he alleged that he had purchased the lands in controversy from William Little, who had bound himself to warrant the titles thereto. Plaintiff charged that said William Little was a resident citizen of the State of New Jersey, and prayed that he be cited to appear and defend, and in the event of Masterson's recovering

the lands in controversy that plaintiff have judgment over against said William Little on his covenants of warranty.

By his second supplemental petition John Little set up the following exceptions to the answer of the defendant Masterson:

"1.    And specially excepting to said answer, this plaintiff excepts to all that portion of said answer wherein he alleges employment by and services rendered to William Little, as attorney in certain suits in the United States court, and the District Court at Galveston, and an indebtedness to the said defendant Masterson by the said William Little for these and other services alleged to have been performed by him for and at the special instance and request of the said William Little, and the knowledge of plaintiff of the rendition of said services, and of an indebtedness of the said William Little to said Masterson, and says that the same, taken separately or together, present no legal defense to plaintiff's action.

"2.    And this plaintiff specially excepts to that portion of said defendant's answer wherein he avers that by reason of said service he held and still holds the title deeds and patents to said lands, because this plaintiff says that the possession thereof creates no charge or lien in defendant's favor upon the land for the recovery of which this suit is brought.

"3.    This plaintiff specially excepts to that portion of defendant's answer wherein he claims and sets up that his fee for professional services rendered was a contingent fee, to be paid in a portion of the land recovered in said named litigation, and the agreement of the said William Little to convey the same to him, because it appears from the answers of the defendant Masterson in this regard that said alleged agreement and no memorandum thereof was in writing, signed by the said William Little, and the same not being binding in law upon the said William Little or legally enforceable against him, the alleged knowledge thereof by this plaintiff presents no bar to the recovery of the plaintiff in this action.

"4.    This plaintiff further excepts to all that portion of defendant's answer setting up a suit and judgment in the District Court of Galveston County, and the decree of partition thereunder, because as appears from said answer the said suit was instituted and the proceedings had thereunder long after the date of this plaintiff's purchase of the land; and further, because this plaintiff was not a party thereto and can not be affected thereby.

"5.    And this plaintiff further excepts to the said answer, and for exception says that the same neither in whole nor in its separate averments presents a legal defense to plaintiff's action."

There was service on William Little of a copy of plaintiff's supplemental petition, with all the exhibits attached, in Newark, New Jersey,

on the 18th day of April, 1888, by Cyrus Benedict, under sheriff of Essex County, New Jersey, sworn to as required by law. .

The case coming on to be heard upon the exceptions, they were sustained, except the general demurrer, thus leaving the defendant Masterson with no answer except the general denial. The court then held that William Little had not been properly served to give the court jurisdiction, refused continuance requested by the plaintiff to get service upon him, and the plaintiff thereupon dismissed the suit as to him. The final judgment is in accordance with the prayers of the plaintiff and of the defendants Ed. and A. C. Hawes, in so far as the enforcement of the agreements was concerned.

Appellant complains that error was committed in sustaining the exceptions, for the following reasons:

"1. Because under the allegations of defendant's answer John Little had no right to plead as an affirmative ground of attack upon defendant the statute of frauds, and apply said plea to a contract alleged to exist between defendant and William Little; that the plea as applied to a contract between defendant and William Little can only be urged by him, and as to him it had already been adjudicated; that the statute renders no contract void, but only voidable.

"2. Because the answer, in so much as it states the substance of the contents of William Little's letters to defendant, taken in connection with the contract for fees sent him by defendant, and all the surrounding circumstances, showed a memorandum in writing signed by said William Little sufficient to satisfy the requirements of the statute of frauds.

"3. Because Masterson's contract with William Little was not a contract for the sale of lands, within the meaning of the statute of frauds, but was a contract for the joint acquisition of lands, which is not affected by the statute of frauds.

"4. Because John Little's promises to Masterson, and his agreement to abide by and respect the judgment that might be rendered, and which was afterwards rendered against William Little, preclude and estop him from denying the binding force and effect of said judgment against him.

"5. Because the judgment in the case of Masterson v. William Little was *res adjudicata* as to William Little, who at said date had the superior legal title to the Mustang and St. Joseph islands lands, for which John Little had not paid, and because at the date of the institution of said suit John Little had not caused his deeds for said lands to be recorded, and defendant had no notice of them.

"6. Because plaintiff came before the court invoking its equitable jurisdiction as an innocent purchaser for a valuable consideration without notice, and can not complain of the relief asked by defendant, the answer showing that he could not be injured by it.

"7. Because the answer charges that the deeds from William Little

to John Little were executed with intent to defraud Masterson, a creditor of William Little, of which intent John Little had notice."

Appellant cites numerous authorities to the effect that under the statute of frauds a parol contract is voidable, and not void; that it is the personal privilege of a party, his privies, or representatives, to abide by or repudiate his contract within the statute, and that a mere stranger can not interfere to prevent the performance.

Our Revised Statutes provide that "no, estate of inheritance or freehold  *  *  *  shall be conveyed from one to another unless the conveyance be declared by an instrument in writing, subscribed and delivered by the party disposing of the same, or by his agent thereunto authorized by writing." Art. 548.

While we believe that the privity of estate existing between William and John Little gave to John Little the right to interpose, under the statute of frauds, the objection that the contract was not in writing, we also think that independently of that statute the one quoted above is applicable and gave validity to the defense.

We think the answer sufficiently shows that the contract between the defendant and William Little was an oral one. No question as to that is raised. The certificates had been located upon the land when the contract was made, and patents for the lands so located were subsequently issued to William Little.

The allegations contained in the answer with regard to the contents of letters written by William Little to defendant do not show such a memorandum in writing as will satisfy the requirements of the statute of frauds.

In the case of Sprague v. Haines, 68 Texas, 217, this court said: "The words 'any contract for the sale of real estate,' as used in the statute, include every agreement by which one promises to alienate an existing interest in land upon a consideration either good or valuable. It is accordingly held, in a number of cases, that a contract to convey land in consideration of labor or services to be rendered is within the statute."

In the case of Reed v. Howard, 71 Texas, 205, it is said "that a contract for the purpose of jointly acquiring title to vacant lands, and for sharing them when acquired, is neither within the statute of frauds nor against public policy, has been held in the many cases enforcing parol contracts made by owners of land certificates with land locators, where a locative interest is stipulated to be taken by the locators."

Appellant contends that he comes within the protection of the last cited case, but we think the allegations of his answer place him clearly within the principle of the first one, and subject him to the requirements of the statutes on the subject.

We can not agree with appellant in his contention that the allegations of his answer, to the effect that after defendant had sued William Little

for partition, John Little represented to him that he did not want to be a party to the suit, and that he would not dispute or contest any right established in that suit against William Little, and that, acting on such representations, defendant failed to make him a party to the suit, etc., are sufficient to hold John Little bound by that judgment, as if he had been made a party to it, and prevent his now asserting his title to the land.

On general principles we do not think that mere oral promises of a person in interest, who is not joined as a party to a suit for land, that if he is not so joined he will hold himself bound by the judgment as if he had been made a party, should be held to make the judgment rendered binding on him by estoppel or otherwise.

In the case of Scoby v. Sweatt, 28 Texas, 731, it is said: "No estoppel can arise without proof of wrong on one side and injury suffered or apprehended on the other, nor unless the injury be so clearly connected with the wrong that it might and ought to have been foreseen by the guilty party. When no injury results from a misrepresentation, its decision belongs to the forum of morals, and not to the judicial tribunals."

If defendant had made John Little a party defendant to his suit against William Little, we must indulge the presumption that he would have asserted his proper defenses, and had he done so, it is evident that no judgment against him for the land could have been rendered.

It is not shown to us in what respect the defendant could more successfully have contended with him in that case than he can in this, and hence we are unable to see that he suffered any prejudice from believing or acting on the promises, if they could be held in any other respect to amount to an estoppel.

William Little's deeds to John Little took effect when they were delivered, and not when they were recorded; and having been delivered, if not recorded, before Masterson sued William Little to recover and partition the lands, it necessarily results that the suit against William Little, who had no title when sued, did not adjudicate the title of John Little, the then owner of the lands.

John Little, in his petition in this suit, sets up a legal title to the lands in controversy. His right to recover can not be affected or delayed by equities, if there be such, between the defendant and William Little to which he is not shown to be subject.

As the holder of the legal title by purchase from William Little, one-third of the land purchased by him can not be set apart to defendant on account of equities between defendant and William Little alone.

The answer fails to show that any title to the lands, either legal or equitable, capable of enforcement in a court of justice by defendant against William Little, existed when William Little sold and conveyed the lands to John Little. If no other sufficient objection had existed, still the question of fraud in the conveyances from William Little to John

Little could not have been adjudicated in this suit without making William Little a party; that not having been done there was no error in sustaining exceptions to so much of the answer as set up that defense.

After the exceptions to the answer had been sustained, defendant proposed under his plea of "not guilty" to prove the matters alleged in the answer. He contends that the court erred in refusing the evidence. It is simply the same question in another form. It was proper to sustain exceptions to the answer, because if proved it was no defense.

There was no error in quashing the service upon William Little. He was a nonresident of the State, and was not found within its limits. The judgment sought against him on his covenants of warranty was a personal action, and, if maintainable in this suit in any aspect, it is well settled that the court had not acquired jurisdiction over him.

It is insisted that the court erred in the following particulars:

"In sustaining said exceptions and striking out said answer, because, by the agreements between the parties, dated November 7 and 10, 1885, set up in said answer, all matters in issue between John Little and this defendant were arranged, and said agreements were to be carried out according to their terms, unless Masterson's rights should be defeated by William Little; unless that contingency happened, John Little bound himself to abide by the Galveston judgment in the case of Masterson v. William Little, and thereby he was concluded from contesting after that agreement this defendant's claims. In the judgment rendered herein in not rendering judgment for Masterson upon the agreement dated November 10, 1884, between John Little and Masterson, in accordance with its terms, William Little not having defeated Masterson in this suit; and in the decree rendered upon the agreement of parties. Under this agreement John Little recognizes Masterson's rights to be as fixed by the partition decree in Galveston, unless William Little should defeat Masterson in this suit. William Little did not defeat Masterson, and Masterson was entitled to the judgment provided for in the agreement."

We think that the court would have been entirely unwarranted in giving the agreements the construction here contended for.

It is evident that what the parties had in contemplation was that William Little should be brought into the case so that he could contest with Masterson his right to the land claimed by him on the merits, and to accept the result of such contest upon the title; and that question being settled, to make some further disposition of other matters between the parties.

As William Little was not made a party defendant, and the contested issues were never tried between him and defendant, they remained to be tried between the plaintiff and defendant, unaffected by the agreements in that respect.

It must be concluded that the agreements were made with the knowledge that under the circumstances the court had no power to acquire com-

pulsory jurisdiction over William Little, and that no more could be done by plaintiff than to make him a party to his pleadings, and have him served with such process as the law provided. Having done that, the party, though not bound, might have voluntarily submitted to the jurisdiction.

The plaintiff having done everything within his power to execute the agreement, and the nonresident having failed to submit himself to the jurisdiction, the court properly declined to exercise it over him. The plaintiff still offered to delay the cause to obtain jurisdiction. Nothing seems to have been suggested tending to show that the desired result would be accomplished by allowing further time, and we see no reason why the defendant may not have properly opposed its being granted, but certainly not with the effect of treating an issue on the merits as having been tried and lost by plaintiff, as is now contended for.

The only assignment not disposed of is raised by a bill of exceptions taken to the action of the court in overruling the exceptions to the answer. The court properly declined to sign it, because the action of the court appears otherwise, and such a practice is not warranted or necessary.

We find no error in the proceedings, and the judgment is affirmed.

*Affirmed.*

Delivered January 28, 1890.