## MILLER v. GRAVES.

### No. 14659.

Court of Civil Appeals of Texas.
Fort Worth.

Jan. 19, 1945.

Rehearing Denied Feb. 23, 1945.

F. M. Bransford, of Fort Worth, for appellant.

Van Zandt Smith, of Fort Worth, for appellee.

McDONALD, Chief Justice.

Mr. and Mrs. E. M. Miller were married in 1904. During their marriage they acquired two tracts of land, one in Wise County and one in Tarrant County. Mrs. Miller inherited a one-fourth interest in the Wise County tract, and they purchased with community funds the remaining three-fourths interest, taking title in the names of both of them. The Tarrant County tract was purchased with community funds, but title was taken in the name of Mr. Miller alone. In 1933 Mr. and

746

Mrs. Miller were divorced, but they did not divide their property. By operation of law, therefore, they became tenants in common of their community interest, and Mrs. Miller continued to own one-fourth interest in the Wise County tract. as her separate property. 15 Tex.Jur. p. 596.

In 1941 Mrs. Miller employed appellee, Frank Graves, an attorney residing in Fort Worth, to bring suit against Mr. Miller to establish her interest in the land, and to recover a money judgment against Mr. Miller. Mrs. Miller made an oral agreement with Mr. Graves that he should have as his attorney's fee a contingent interest of one-third of any property or money that he might recover for her.

A suit in the usual form of a suit for partition of land was filed on behalf of Mrs. Miller, her petition also containing a count seeking recovery of a money judgment not necessary to describe in detail here. She alleged that she owned five-eighths interest in the Wise County tract, and one-half interest in the Tarrant County tract, and that Mr. Miller owned three-eighths and one-half interest, respectively, in said tracts. She prayed for a partition of the land, and for a money judgment.

Trial of the cause resulted in a judgment fixing Mrs. Miller's interest as five-eighths in the Wise County tract, and one-half in the Tarrant County tract, and fixing Mr. Miller's interest as three-eighths and one-half, respectively, in said tracts. The judgment found the land to be incapable of partition, and ordered it sold and the proceeds divided accordingly. Mrs. Miller was given no judgment on her suit for money, and Mr. Miller was denied a recovery on a cross-action for a money judgment which he had filed. Miller appealed to this Court of Civil Appeals, where the judgment of the trial court was affirmed. The Court of Civil Appeals overruled Mr. Miller's motion for rehearing on November 5, 1943. No application for writ of error was filed, and the judgment thus became final.

On November 12, 1943, Mrs. Miller conveyed the land in question to Mr. Miller.

Mr. Graves brought this suit to recover his attorney's fee, suing both Mr. and Mrs. Miller. First he sought to recover a one-third interest in the share decreed to Mrs. Miller in the partition suit, and in the alternative sought to recover the sum of $2,000 as a reasonable fee for his services. He alleged that Mr. Miller took the land

from Mrs. Miller with full notice of appellee's rights, and further alleged that the conveyance was in fraud of Mrs. Miller's creditors, and sought to set the conveyance aside.

The jury found in response to special issues: (1) That Mr. Miller knew at the time he acquired the land from Mrs. Miller, on November 12, 1943, that appellee was claiming an interest in the land. (2) That Mrs. Miller executed the deed to Mr. Miller for the purpose of avoiding paying appellee his fee. (3) That Mr. Miller knew that Mrs. Miller was so doing. (4) That Mr. and Mrs. Miller entered into a contract for the sale and purchase of the land with the intent to avoid payment of the fee which Mrs. Miller owed to appellee. (5) That the Wise County land was reasonably worth $23 per acre. (6) That the Tarrant County land was reasonably worth $35 per acre. (7) That appellee's services rendered to Mrs. Miller in the suit mentioned were reasonably worth $250.

The judgment decreed that Mrs. Miller owned no interest in the land; that appellee owned one-eighth interest in the Wise County land and one-sixth in the Tarrant County land; and that Mr. Miller owned seven-eighths and five-sixths, respectively, of said tracts. The judgment decreed that the land was incapable of partition and ordered it sold and the proceeds divided accordingly.

Mr. Miller has appealed.

■ Appellant pleaded in the trial court, and contends here, that appellee's claim of an interest in the land is barred by the Statute of Frauds, Article 3995, Sec. 4, of the Revised Statutes. We believe that the contention is sound.

The general rule is thus stated in 49 American Jurisprudence, Statute of Frauds, § 175, p. 510: "An agreement to compensate an attorney by giving him a part of the land involved in the litigation is a contract creating an estate or interest in lands, and therefore is within the statute of frauds, although the services are to be rendered in a suit to remove a cloud of the title."

A similar statement of the rule is found in 37 C.J.S., Frauds, Statute Of, § 121, p. 616. See also cases cited in the annotation in 21 A.L.R. 352.

The general rule is followed in Texas. Sprague v. Haines, 68 Tex. 215, 4 S.W. 371;

Masterson v. Little, 75 Tex. 682, 13 S.W. 154; Phoenix Land Co. v. Exall, Tex.Civ. App., 159 S.W. 474, writ of error refused.

Appellee argues that the case falls under the rule which permits enforcement of oral contracts respecting the acquisition of lands, as distinguished from the sale or alienation of lands, his theory being that Mrs. Miller acquired the land in the suit handled by appellee. The cases relied on by appellee are, we believe, distinguishable from the case before us.

Appellee first cites Hynd v. Sandler, Tex. Civ.App., 95 S.W.2d 165; writ of error dismissed. There Hynd and one Perkins formed what the court called an adventuring partnership. Hynd furnished the money with which Perkins purchased and developed certain oil properties. Hynd claimed that he was induced by fraud and deceit practiced upon him by Perkins to sign a written agreement which was materially different from their oral agreement of partnership. Then Hynd employed an attorney to represent him in a suit against the partner Perkins, agreeing to pay him one-third of anything that might be recovered. The litigation was instituted, and compromise judgment entered awarding certain money and property to Hynd. The real controversy between the parties appears to have been over the construction of a letter written to the attorney by Hynd, setting out the terms of employment including the fee to be paid. The opinion of the court recites that the decision turns largely on the meaning of the writings involved. It being claimed that the letter was an insufficient writing to satisfy the Statute of Frauds because of inadequacy of description of the land involved, the court remarked in its opinion that the Statute of Frauds had no application, but went on to say that the writing was sufficient for the purpose mentioned. The general remarks to be found in this opinion are not authority in support of appellee's contention, in the face of the holdings of our Supreme Court, above cited.

Phoenix Land Co. v. Exall, Tex.Civ. App., 159 S.W. 474, 481, writ of error refused, is a complicated case, but the court there recognized the distinction between a contract to compensate the attorney by giving him a part of land already owned by the client, and a contract to compensate him by giving him a part of land which is to be acquired through the efforts of the attorney. In that case one oral contract was held enforcible, and another was held unenforcible. Certain general creditors of a railroad company employed the law firm of Dickson & Moroney to collect their respective claims, agreeing that the attorneys should have as their fee a certain proportion of anything that might be recovered for the creditors, whether in money or property. It was intended to subject certain lands of the railroad company to the payment of such claims, or to acquire the lands, and divide them between the creditors and their attorneys. As the court says in its opinion, "the creditors did not then own or claim to own said lands or any interest in them." The creditors agreed to pool their interests. A large judgment held by one of the creditors was used in the efforts to collect the claims. Execution thereon was levied on certain lands, and sale made thereunder. Eventually, after certain litigation, title to the lands in question became vested in three trustees for the benefit of the creditors. The court held that the claim of the attorney for an interest in this land was enforcible, and not barred by the Statute of Frauds. The contract between the creditors and their attorneys was one involving the acquisition of lands in which, as has been said, the creditors neither owned nor claimed to own an interest when the attorneys were employed. But at a later stage in the proceedings, after the land had been conveyed to the trustees for the creditors, and after the attorneys had acquired an equitable interest therein, Moroney employed certain other attorneys to assist in a suit against other persons who also were claiming an interest in the land, and agreed that they should have an interest in the lands as their fee. The latter contract was held within the Statute of Frauds, the court saying that the former contract between the creditors and Dickson & Moroney was a contract for a joint enterprise to obtain title to land which neither of the parties then owned; whereas the latter contract was an agreement to convey to the attorneys later employed an interest in lands, the equitable title to which was then in the creditors and in their attorneys Dickson & Moroney.

There is another type of case involving this same distinction. Contracts by which one agrees to locate a land certificate belonging to another upon public domain and to obtain a patent to the land so located, in consideration of a promise of the

latter to convey him a part of the premises when title is obtained, are held not to be within the Statute of Frauds; but where the land has already been located and surveyed and is ready for patent, it has, in contemplation of law, been acquired by the owner of the certificate, and an oral agreement to convey an interest in it to one who procures a patent is within the statute. See 20 Tex.Jur. pp. 276, 277, and cases there cited. See also Masterson v. Little, 75 Tex. 682, 13 S.W. 154.

Appellee argues that Mr. Miller was claiming to own the entire title to the land at the time Mrs. Miller employed appellee, and that the suit was therefore an enterprise to acquire the land. The opposite party in any land suit is usually claiming the land or an interest therein. It is the adversity of claims that ordinarily produces the suit. The test is not whether Mr. Miller claimed something that Mrs. Miller owned. The test here is whether Mrs. Miller already owned or claimed to own a legal or equitable interest in the land when she made the oral agreement with her attorney. She claimed and owned both legal and equitable title to five-eighths interest in the Wise County land, and equitable title to one-half interest in the Tarrant County land.

Appellee also cites Anderson v. Powers, 59 Tex. 213, but that decision was expressly overruled in Sprague v. Haines, 68 Tex. 215, 4 S.W. 371.

Gillett v. Hudspeth, Tex.Civ.App., 233 S.W. 850, writ of error refused, is not in point here. The employment contract was in writing, and the only question was whether an oral release by one of the law partners of any claim to property recovered in the suit was binding. The facts of the case, and the law applicable, are so different from those before us that the opinion is not of value in reaching a decision here.

Nor is Henyan v. Trevino, Tex.Civ. App., 137 S.W. 458, writ of error refused, in point. There the clients sued the attorney, alleging that they had agreed that he should have half of the lands recovered as his fee, and that through fraudulent transactions he acquired title to all of the lands. The clients sued for only one-half the lands, that is to say, the half that they alleged belonged to them, and made no effort to recover from the attorney the half which they had agreed that he should have as a fee.

Other cases are cited in appellee's brief, but we do not believe that they are similar enough to the case before us to require discussion here. We have considered all of them carefully, but find nothing in them contrary to the holdings in the cases, above cited, which have denied recovery to the attorneys.

Appellee also argues that there is fraud in the case of such nature as will relieve it from the operation of the Statute of Frauds.

The fact that appellee rendered the services he was employed to render, and that his client failed to convey to him the third interest in her share of the land, will not take the case out of the statute. This amounts to no more than payment of the consideration, which is not enough. To take the case out of the statute, there must be not only payment of the consideration but also possession and valuable improvements made by the promisee. This is definitely settled by Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216, and a host of other cases.

If appellee did not have an enforcible contract when his services were completed, then any subsequent fraud committed by Mr. Miller or Mrs. Miller could have no bearing on the enforcibility of the contract. If he had no enforcible interest in the land before Mrs. Miller conveyed the land to Mr. Miller, he could have no enforcible interest after such conveyance. If he had no legal or equitable interest in the land, the subsequent conveyance to Mr. Miller, whatever may have been the motives behind it, caused no damage to appellee. To test the matter another way, suppose we should set aside the conveyance from Mrs. Miller to Mr. Miller. It would be of no benefit to appellee, because the Statute of Frauds would still be a bar to a recovery by him of any interest in the land.

In such a case as this, appellee could sue for the value of his services on the basis of quantum meruit. Alworth v Ellison, Tex.Civ.App., 27 S.W.2d 639, writ of error refused, and cases there cited. Appellee sought such relief, by alternative plea, and alleged in connection therewith that the conveyance was fraudulent as to him. The jury found that his services were worth $250. The pleadings, the evidence, and the findings of the jury are sufficient,

we believe, to support the claim that the conveyance was fraudulent as to creditors.

Appellee was entitled to a personal judgment against Mrs. Miller, but not against Mr. Miller, for the $250; and was entitled to have the conveyance to Mr. Miller set aside, as between appellee and Mr. Miller, in order that the interests conveyed by Mrs. Miller might be made subject to execution or other proper process issuing to enforce such judgment. Arbuckle Bros. Coffee Co. v. Wenar, 77 Tex. 43, 44, 13 S.W. 963; Eckert v. Wendel, 120 Tex. 618, 40 S.W.2d 796, 76 A.L.R. 855. Appellant, Mr. Miller, in his brief asks that judgment be rendered here against Mrs. Miller for the $250. Appellee in his brief asks only that the judgment of the trial court be affirmed. Mrs. Miller did not appeal, nor was she made a party to the appeal by either appellant or appellee. In such state of the record we do not feel justified in rendering judgment against her.

We therefore reverse the judgment of the trial court, and remand the cause for another trial not inconsistent with the holdings announced in this opinion.

Reversed and remanded.