ACCEPTED
01-15-00604-cv
FIRST COURT OF APPEALS
HOUSTON, TEXAS
10/5/2015 5:43:39 PM
CHRISTOPHER PRINE
CLERK

NO. 01-15-00604-CV

_____

In the
FIRST COURT OF APPEALS
at
HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
10/5/2015 5:43:39 PM
CHRISTOPHER A. PRINE
Clerk

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

D & R CONSTRUCTORS, INC., MICHAEL RUSHING, STEPHANIE RUSHING, PENN RUSHING AND FLORENCE RUSHING, Appellants

v.

TEXAS GULF ENERGY, INC. ON BEHALF OF CS BANKERS V LLC AND TEXAS GULF FABRICATORS, Appellees

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**On Appeal from the 270th District Court
of Harris County, Texas
Trial Court Cause No. 2013-00543**

_____

**BRIEF OF APPELLANTS**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

THE GORE LAW FIRM, P.C.
**George W. Gore**
**Lead Counsel**
State Bar No. 24029582
6200 Savoy, Suite 1150
Houston, Texas 77036
(713) 224-2000 (Telephone)
(713) 224-2004 (Facsimile)

ATTORNEYS FOR D & R CONSTRUCTORS, INC., MICHAEL RUSHING, STEPHANIE RUSHING, PENN RUSHING AND FLORENCE RUSHING.

**ORAL ARGUMENT REQUESTED**

NO. 01-15-00604-CV

_____

In the
FIRST COURT OF APPEALS
at
HOUSTON, TEXAS


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


D & R CONSTRUCTORS, INC., MICHAEL RUSHING, STEPHANIE RUSHING,
PENN RUSHING AND FLORENCE RUSHING, Appellants


v.


TEXAS GULF ENERGY, INC. ON BEHALF OF CS BANKERS V LLC AND
TEXAS GULF FABRICATORS, Appellees


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**On Appeal from the 270th District Court
of Harris County, Texas
Trial Court Cause No. 2013-00543**

_____

**BRIEF OF APPELLANTS**


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

THE GORE LAW FIRM, P.C.
**George W. Gore**
**Lead Counsel**
State Bar No. 24029582
6200 Savoy, Suite 1150
Houston, Texas 77036
(713) 224-2000 (Telephone)
(713) 224-2004 (Facsimile)

ATTORNEYS FOR D & R
CONSTRUCTORS, INC., MICHAEL
RUSHING, STEPHANIE RUSHING, PENN
RUSHING AND FLORENCE RUSHING.

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

D & R CONSTRUCTORS, INC..................................................Intervenor/Appellant

MICHAEL RUSHING, STEPHANIE RUSHING, PENN RUSHING AND FLORENCE RUSHING. ...........................Defendants/Counter Plaintiffs/Appellants

George W. Gore .Counsel for Defendants, Intervenor & Counter Plaintiffs/Appellants
The Gore Law Firm, P.C.
6200 Savoy, Suite 1150
Houston, Texas 77036


Texas Gulf Energy, Inc., CS Bankers V, LLC, Texas Gulf Fabricators, Inc., and Timothy Connolly ………………….……………..Plaintiffs & Counter Defendants/Appellees

Gary M. Jewell..................Counsel for Defendants & Counter Plaintiffs/Appellants
Christian Smith & Jewell
2302 Fannin, Suite 500
Houston, Texas 77002


Texas Gulf Fabricators, LLC, Brian Hendry and Lester Smith
……………………………………….…………………………..Cross Defendants/Appellees

Paul Dobrowski.........................................Counsel for Cross Defendants/Appellees
Dobrowski, Larkin & Johnson, LLP
4601 Washington Ave, Suite 300
Houston, Texas 77007

i

# TABLE OF CONTENTS

*Page(s)*

IDENTITY OF PARTIES AND COUNSEL ........................................................i

TABLE OF CONTENTS ................................................................................ ii

INDEX OF AUTHORITIES................................................................................iv

STATEMENT OF THE CASE...............................................................................1

REQUEST FOR ORAL ARGUMENT ..................................................................5

ISSUES PRESENTED.........................................................................................6

Point of Error One ..................................................................................
change of ownership The District Court committed error by
granting summary judgment on the issue of foreclosure:
a) the evidence attached to the Appellee's summary judgment
motions establishes the foreclosure was improper.  As such, the
summary judgment in favor of Appellees should be set aside and
this Court court should render a judgment in favor of Appellants.
b) the foreclosure was also improper because the evidence presented
established Appellees blocked the notice of foreclosure and made
it impossible to make payments.
c) the foreclosure was also improper for a variety of other reasons. . . .

Point of Error Two
The District Court committed error which caused the rendition of an
improper order when it entered judgment dismissing the Quiet
Title cause of action.  Since the foreclosure was improper, the
quiet title cause of action should also be set aside and the issue
resolved in accordance with the foreclosure ruling... ...........................

Point of Error Three.................................................................................
The District Court committed error by ignoring at least one cause
of action and signing orders exceeding the relief requested in
summary judgment motions

Point of Error Four

The District Court committed error which caused the rendition of an improper temporary injunction when it granted no-evidence summary judgment and did not compel discovery responses................

Point of Error Five. ......................................................................................
The District Court committed error which caused the rendition of an improper order when it entered summary judgment on fraud, breach of contract, quantum meruit, negligent misrepresentation, breach of fiduciary duty, conversion, conspiracy, and tortuous interference. ........................................................................

Point of Error Six

The District Court committed error which caused the rendition of an improper order when it entered sanctions in this matter........................

Point of Error Seven. ...................................................................................
The District Court committed error which caused the rendition of an improper order when it entered a judgment for attorneys' fees without proper segregation or support and which contradicts case law requiring trial on whether the attorney's fees are reasonable and necessary.........................................................................

STATEMENT OF FACTS .................................................................................7

SUMMARY OF THE ARGUMENT ..................................................................10

ARGUMENT AND AUTHORITIES ................................................................11

C Point of Error One .....................................................................................11
change of ownership The District Court committed error by granting summary judgment on the issue of foreclosure:
a) the evidence attached to the Appellee's summary judgment motions establishes the foreclosure was improper. As such, the summary judgment in favor of Appellees should be set aside and this Court should render a judgment in favor of Appellants.

  b) the foreclosure was also improper because the evidence presented established Appellees blocked the notice of foreclosure and made it impossible to make payments.

  c) the foreclosure was also improper for a variety of other reasons. . . .

Point of Error Two
The District Court committed error which caused the rendition of an improper order when it entered judgment dismissing the Quiet Title cause of action.  Since the foreclosure was improper, the quiet title cause of action should also be set aside and the issue resolved in accordance with the foreclosure ruling... .........................23

Point of Error Three..................................................................................24
The District Court committed error by ignoring at least one cause of action and signing orders exceeding the relief requested in summary judgment motions _____3

Point of Error Four
The District Court committed error which caused the rendition of an improper temporary injunction when it granted no-evidence summary judgment and did not compel discovery responses.............24

Point of Error Five. ...............................................................................
The District Court committed error which caused the rendition of an improper order when it entered summary judgment on fraud, breach of contract, quantum meruit, negligent misrepresentation, breach of fiduciary duty, conversion, conspiracy, and tortuous interference. ...............................................................................25

Point of Error Six
The District Court committed error which caused the rendition of an improper order when it entered sanctions in this matter.....................37

Point of Error Seven. ...............................................................................39
The District Court committed error which caused the rendition of an improper order when it entered a judgment for attorneys' fees without proper segregation or support and which contradicts case

law requiring trial on whether the attorney's fees are reasonable and necessary..................................................................................3

PRAYER .............................................................................41

APPENDIX ..........................................................................43

CERTIFICATE OF SERVICE ................................................44

# INDEX OF AUTHORITIES

*Cases*                                                                    *Page(s)*

*Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003)
*M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000)
*City of Houston v. McDonald*, 946 S.W.2d 419, 420 (Tex. App.—Houston [14th Dist.] 1997, writ denied).
*Casso v. Brand*, 776 S.W.2d 551, 556 (Tex. 1989).
*City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).
*Jones v. Tex. Pac. Indem. Co.*, 853 S.W.2d 791, 794 (Tex. App.—Dallas 1993, no writ).
*Sullivan v. Hardin*, 102 S.W.2d 1110 (Tex. Civ. App. 1937)
*Smith v. Albright* (Tex. Com. App.) 288 S.W. 178.
*Allbright v. Smith* (Tex. Com. App.) 5 S.W.2d 970.
*Reisenberg v. Hankins* (Tex. Civ. App.) 258 S.W. 904, 910.
*Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 511 (Tex. 1995).
*Longview Constr. & Dev., Inc. v. Loggins Constr. Co.*, 523 S.W.2d 771, 779 (Tex. Civ. App.—Tyler 1975, writ dism'd by agr.).
*Adebo v. Litton Loan Servicing, L.P.*, 2008 Tex. App. LEXIS 3935 at *10, No. 01-07-00708-CV (May 29, 2008).
*Jaster v. Comet II Constr., Inc.*, 2014 Tex. LEXIS 567 at *13.
*Brown v. Cates*, 99 Tex. 133 (1905).
*Duty v. Graham*, 12 Tex. 214 (1854).
*Univ. Sav. Ass'n v. Springwoods Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex. 1982).
*League City State Bank v. Mares*, 427 S.W.2d 336, 340 (Tex. Civ. App.--Houston [14th Dist.] 1968, writ ref'd n.r.e.).
*UMLIC VP LLC v. T & M Sales and Envtl. Sys., Inc.*, 176 S.W.3d 595, 610 (Tex. App.--Corpus Christi 2005, pet. denied).
*Harwath v. Hudson*, 654 S.W.2d 851, 853 (Tex. App. Dallas 1983).
*Longview Constr. & Dev., Inc. v. Loggins Constr. Co.*, 523 S.W.2d 771, 779 (Tex. Civ. App.—Tyler 1975, writ dism'd by agr.).
*Woodard v. Southwest States, Inc.*, 384 S.W.2d 674, 675 (Tex. 1964).
*Miller v. Graves*, 185 S.W.2d 745, 1945 Tex. App. LEXIS 649 (Tex. Civ. App. 1945), writ ref'd),. *Scott v. Walker*, 141 Tex. 181, 170 S.W.2d 718 (Tex. 1943).
*Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942 (Tex. 1990).
*Clower v. Brookman*, 325 S.W.2d 440 (Tex.Civ.App. -- San Antonio, 1959, no writ).
*Ferrous Prods. Co. v. Gulf States Trading Co.*, 323 S.W.2d 292, 296-97 (Tex. Civ.

App.—Houston, 1959), *aff'd*, 160 Tex. 399, 332 S.W.2d 310, 312 (Tex. 1960).

*Colbert v. Dallas Joint Stock Land Bank of Dallas,* 129 Tex. 235, 102 S.W.2d 1031-1034 (1937).

*Gonzales v. McHugh*, 21 Tex. 256.

*Excess Underwriters at Lloyd's, London*, 246 S.W.3d at 50.

*Dallas Elec. Supply Co. v. Branum Co.*, 143 Tex. 366, 185 S.W.2d 427, 429 (Tex. 1945).

*Rankin v. Naftalis*, 557 S.W.2d 940, 944 (Tex. 1977).

*Fitzgerald v. Hull*, 237 S.W.2d 256, 264 (Tex. 1951).

*Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942).

*Hunter Bldgs. & Mfg., L.P. v. MBI Global, L.L.C.*, 436 S.W.3d 9, 15-16 (Tex. App. Houston 14th Dist. 2014).

*Chon Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005).

*Kelly v. Galveston County*, 520 S.W.2d 507, 513 (Tex. Civ. App. Houston 14th Dist. 1975).

*John Paul Mitchell Sys. v. Randalls Food Mkts.*, 17 S.W.3d 721, 730 (Tex. App. Austin 2000).

*Southwestern Bell tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992).

*GTE Comms Sys. V. Tanner*, 856 S.W.2d 725, 730 (Tex. 1993).

*Lake Travis ISD v. Lovelace*, 243 S.W.2d 244, 254 (Tex.App.—Austin 2007, no pet.).

*Koch Oil Co. v. Wilber*, 895 S.W.2d 854, 867 (Tex. App.—Beaumont 1995, writ denied).

*Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310-11 (Tex. 2006).

*AU Pharm., Inc. v. Boston*, 986 S.W.2d 331, 336 (Tex. App.—Texarkana 1999, no pet.).

*Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10-11 (Tex. 1991), *modified on other ground., Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299 (Tex. 2006).

*City of Garland v. Dallas Morning News,* 22 S.W.3d 351, 367 (Tex. 2000); *Bocquet v. Herring*, 972 S.W.2d 19, 20-21 (Tex. 1998).

*Fuqua v. Oncor Elec. Delivery Co.*, 315 S.W.3d 552, 2010 Tex. App. LEXIS 2323 (Tex. App. Eastland 2010).

***Rules***                                                                 ***Page(s)***

TEX. R. CIV. P. , Rule 13 ..........................................................................................

Tex. R. App. P., Rule 39 .........................................................................................

***Statutes and Other Authorities***                                                       ***Page(s)***

Property Code 51.002-51.0075 ................................................................................
Tex. R. Civ. P. 166a(i).

***Secondary Sources***                                                                 ***Page(s)***

Williston..................................................................................................................

**TO THE COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS:**

Appellants, D & R Constructors, Inc. ("D&R"), George W. Gore and Michael Rushing, Stephanie Rushing, Penn Rushing and Florence Rushing ("Rushings") (jointly "Appellants"), comes, by and through their attorney of record, and pursuant to Rule 38.1 of the TEXAS RULES OF APPELLATE PROCEDURE presents this Brief of Appellants and pray that the orders and judgment entered against Appellants from Cause No. 2013-00543, *Texas Gulf Energy, Inc. on Behalf of CS Bankers V, LLC and Texas Gulf Fabricators v. Michael Rushing, Stephanie Rushing, Penn Rushing and Florence Rushing*, in the 270th District Court of Harris County, Texas, be set aside (including all summary judgment orders, the final order including attorney's fees, and the sanctions order), that judgment be rendered in favor of Appellants on the issues of foreclosure and quiet title, and, that the remaining causes of action be remanded to the Trial Court with instructions to enter a new docket control order allowing a discovery period of at least five months on the remaining causes of action before trial.

## STATEMENT OF THE CASE

The Appellees initiated this case as a suit for conversion and an application for an injunction. Appellants counter claimed for fraud, conversion, wrongful foreclosure, intentional wrongful foreclosure, quiet title, tortuous interference, negligent representation, breach of fiduciary duty, breach of contract, conspiracy,

1

quantum meruit and promissory estoppel.  Appellants also brought in Hendry and Smith as counter defendants to quiet title and for their participation in directing the fraud.

The trial court granted several summary judgment orders which were incorporated into one final order.  There was no trial.  As shown below, the summary judgments fail to address all causes of action and are erroneous for other reasons as well.

August 28, 2014; Order titled – CS Bankers' Partial Summary Judgment on Foreclosure; Doc # 62235529:  CRI 593
October 31, 2014; Order titled - Final Summary Judgment; Doc # 63014312 (Smith);  CRI 1580
November 14, 2014; Order titled – Order Granting Joint Motion for Entry of Supplemental Order; Doc # 63213850:  CRII 1944
November 19, 2014; Order titled - Final Summary Judgment; Doc # 63290903 (Hendry & TGF) :  CRII 1946
December 17, 2014; Order titled – Order Granting Texas Gulf Energy, Inc.'s Motion for Partial Summary Judgment on the "Letter of Intent"; Doc # 63638422: CRII 1972
February 3, 2015; Order titled - Final Summary Judgment; Doc # 64155446:  CRII 2027
February 3, 2015; Order titled – Order Assessing Sanctions; Doc # 64155445:  CRII 2025
April 6, 2016;  Order denying  – Order Denying Appellants' Motion for Summary Judgment:  CRI 976
April 13, 2015; Order titled – Final Judgment;  Doc# 65332341:  CRI 977


D&R Constructors is a second generation family company owned and controlled by the Rushing family.  The primary asset owned by D&R is a fabrication plant, along with the equipment and tools located on that site.  This case concerns a

dispute where Texas Gulf Energy ("TGE') representatives convinced the Rushings to join into a joint venture. In connection with that joint venture, CS Bankers V, LLC ("CSB"), a subsidiary of TGE, purchased the note from the bank (approximately $435,000 owed – Facility and equipment valued at over $2,000,000.00). In addition, a lease was executed under which the lease payment was directed to CSB to cover any payments as they became due. A Binding Letter of Intent ("BLOI") containing the major terms was signed at the same time. TGE did not follow through on its promises, including never providing final paperwork or making a payment of $100,000.00 which was due only ten days after the BLOI was signed. Emails have been discovered that indicate TGE had decided not to work with the Rushings (whether this was before or shortly after the Binding Letter of Intent was signed is still in dispute). Instead of terminating the joint venture and the lease, TGE promised final paperwork and negotiated with the Rushings for about six months – but CSB secretly foreclosed on the Facility as fast as it could - which was within three months. Since TGE was leasing the Facility, it sent the foreclosure notice to itself and simply refused the foreclosure notice by having its employees advise the postman that D&R was no longer at that location. But, in truth, Michael and Penn Rushing were still working there in connection with trying to get the joint venture moving and, along with D&R, was still receiving mail there – except for the one foreclosure notice that was refused

3

by TGE staff. The funny thing is that the notice was defective anyway (no auction time on mailed notice makes it defective as a matter of law). Still, in addition to setting the improperly noticed trustee sale, the court should allow a cause of action for intentional wrongful foreclosure with punitive damages due to the intentional blocking of the notice.

Eventually, after about six month of continuing to negotiate with the Rushings while "the attorneys prepared the paperwork," TGE advised the Rushings they were no longer welcome and that the locks would be changed. At that point, equipment and other items were removed from the Facility and Appellees then filed suit and sought orders in District Court requiring the return of equipment. Appellants counter claimed for wrongful foreclosure, fraud, conversion and other claims as listed above.

The District Court denied multiple motions to compel discovery and depositions against the Plaintiffs. Plaintiffs did not provide any meaningful discovery responses and quashed all deposition notices (the lack of response is even more egregious considering Plaintiffs waived their objections when they unilaterally terminated a Rule 11 agreement). Still, instead of ordering Plaintiffs to produce experts and corporate representatives – and provide responses to discovery where it waived its objections, the District Court found it more convenient to grant summary judgments (the oddest was when, in response to a motion to compel documents and depositions from

Appellees, the trial court granted months old no evidence summary judgments). As discussed in detail below, this was unfair and improper. Plaintiffs' tactics are a sad example of the games lawyers should not play – and, in this case, the District Court let it slide through. All judgments in Appellees' favor should be set aside, the case remanded and a proper period for discovery be allowed.

This case also involves a sanctions issue. Emails were presented indicating Lester Smith was controlling or directing TGE, Connolly, Hendry and others. As such, he was sued by Appellants. However, the Rushings never had face to face contact with Lester Smith. The District Court found that since there was no direct contact, the causes of action for fraud and conspiracy to commit fraud were sanctionable. However, it is not appropriate to sanction a party and counsel for bringing a cause of action that should extended to be applicable to the case at hand. Clearly, the cause of action should extend to cover a puppet master and not just the minions.

TGE and its representatives made representations and executed a binding letter of intent to obtain use of the Facility and to get the Rushing to work there. TGE now claims the BLOI is not a contract. If it is a contract, then it should be enforced. If it is not a contract, then the Rushings should still be able to recover their damages under Quantum Meruit or Promissory Estoppel (a cause of action that was simply never

5

addressed by the Trial Court). Simply put, at the end of the day it is uncontested that TGE took Appellants Facility. So, either it is damages for breach of contract (Appellees claim the Facility was to come to them as part of the deal), quantum meruit or promissory estoppel (if no contract then equity applies).

In short, the foreclosure notice was clearly defective and the appellate court should render in Appellants favor and further quiet title back to D&R (there are many reasons to set it aside but the most obvious and clear is the sworn evidence filed by the Appellees clearly showing a defect). The other orders should be set aside and the case should be remanded to allow discovery and then proceed to trial on the fraud and other issues.

## REQUEST FOR ORAL ARGUMENT

Appellants respectfully submit that this case merits oral argument under Rule 39 of the Texas Rules of Appellate Procedure because oral argument would significantly aid the Court in the determination of the legal and factual issues presented in this appeal of a complex, tripartite action.

## ISSUES PRESENTED

Point of Error One ................................................................................................................
change of ownership The District Court committed error by granting summary judgment on the issue of foreclosure:
        a) the evidence attached to the Appellee's summary judgment
           motions establishes the foreclosure was improper. As such, the

summary judgment in favor of Appellees should be set aside and this Court should render a judgment in favor of Appellants.

    b) the foreclosure was also improper because the evidence presented established Appellees blocked the notice of foreclosure and made it impossible to make payments.

    c) the foreclosure was also improper for a variety of other reasons. . . .

Point of Error Two: The District Court committed error which caused the rendition of an improper order when it entered judgment dismissing the Quiet Title cause of action. Since the foreclosure was improper, the quiet title cause of action should also be set aside and the issue resolved in accordance with the foreclosure ruling.

Point of Error Three: The District Court committed error by ignoring at least one cause of action and signing orders exceeding the relief requested in summary judgment motions.

Point of Error Four: The District Court committed error which caused the rendition of an improper temporary injunction when it granted no-evidence summary judgment and did not compel discovery responses.

Point of Error Five: The District Court committed error which caused the rendition of an improper order when it entered summary judgment on fraud, breach of contract, quantum meruit, negligent misrepresentation, breach of fiduciary duty, conversion, conspiracy, and tortuous interference.

Point of Error Six: The District Court committed error which caused the rendition of an improper order when it entered sanctions in this matter.

Point of Error Seven: The District Court committed error which caused the rendition of an improper order when it entered a judgment for attorneys' fees without proper segregation or support and which contradicts case law requiring trial on whether the attorney's fees are reasonable and necessary.

## I.
## STATEMENT OF FACTS

TGE, Connolly and CSB worked together to convince the Appellants to turn over their Facility (including equipment and personal property located at the Facility) and to work with them on a joint venture where Mike and Penn Rushing worked at the Facility to produce jobs (Appellees promised a multi-million dollar backlog which did not exist). RRI 782-800. To induce this turnover, Appellees executed a binding letter of intent and a lease while promising to prepare the final agreement which would include other terms requested by the Appellants. Id. But, after getting possession of the Facility, Appellees refused to prepare the final paperwork and foreclosed on the Facility without notifying the Appellants. Then, they changed the locks and advised Appellants to leave and then sued to terminate the agreement. The end result of the deal was the Appellees taking possession of Appellants Facility, personal property and equipment to their benefit and to the detriment of the Appellants – despite supposedly working "with" them in a joint venture. Id.

Texas Gulf Energy, Inc. ("TGE") and its affiliates, CS Bankers V, LLC, ("CSB") and Texas Gulf Fabricators, Inc. ("TGF"), are controlled by a variety of people, which are working together to defraud the Rushing family of their business and their property. One of these people is Tim Connolly. He is the manager of TGF, represents TGE in business dealings, created CSB and owned a portion of CSB and now appears to own all of CSB. In addition, Appellees executed a Binding Letter of

8

Intent that has been breached and also breached a lease agreement. Cites below. Appellees are simply trying to take the Appellants Property for themselves and not pay for it. They want to steal a facility that is worth over two million dollars for less than the five hundred thousand dollars they paid for the Note and ignore the dealings that put them in position to take that property.

First, CSB legally did not even exist in 2012. And, even though it identified itself as a Texas company, there is no such company in Texas then, now or ever. In fact, even this suit was originally filed on behalf of the imaginary CSB, "A Texas Corporation." (See Page 1 of Original Petition). There is a CSB in Nevada that was inactive in 2012 due to apparent nonpayment of taxes (since restored in late 2013). Now, it seems that it has decided that CSB is that Nevada corporation (See Amended Petition) – and an affiliate of TGE just like TGF. There is no apparent reason to have involved an affiliate in the transaction other than fraud. TGE is charged with all knowledge and awareness of its agents and representatives. As its parent, TGE had equitable title in all of its property and had authority and direct knowledge. At the time the Posting Letter was fraudulently mailed and intercepted, Connolly was CEO of Texas Gulf Oil & Gas, Inc., a 100% owned subsidiary of TGE. Connolly was also majority shareholder and Managing Member of the foreclosing lender, CS Bankers V, LLC. CRI 517-535. At the same time, TGE purportedly owned a portion CS Bankers,

9

V, LLC. *Id.* TGF, who appear to currently claim ownership of the Property, was later sold to CSB for the benefit of Connolly. CRI 517-535 at Exhibit G. And, through the entire process, Connolly is bargaining on behalf of all the parties. Id at Exhibits H (first deal offer), I (emails with TC offering portion of deal to Hendry).

This case revolves around one key event: the Defendants letting Appellees take possession of the Facility after being fraudulently induced into entering a joint venture with TGE on July 11, 2012. Id. Exhibit B. The purpose of that joint venture was to form Texas Gulf Fabrication, Inc. – which would be 81% owned by the Rushings. At the same time, TGE presented page 9 of the Loan Sale Agreement for signature and stated they were going to purchase the Note so there were no concerns about making the payments (this page does not identify CSB). The Defendants were under the impression that the Note was being purchased by the joint venture. Instead it was purchased by CS Bankers V LLC – which, as a subsidiary is owned, controlled and part of TGE. CSB has been identified as "an affiliate of TGE" in the last amended petition filed by TGE and CSB on July 16, 2014. An "affiliate" is defined as a person or organization attached to a larger body.

It is important to note that during negotiations leading up to the execution of the contract on July 11, 2012, several proposals had been made where the facility would be foreclosed – and each was refused. Id at Exhibit H. The Rushings repeatedly

refused to agree to give up their facility. Id at Affidavits. That is why the Binding Letter of Intent did not include them giving up their property. That is why a lease agreement was executed. The sole purpose of the lease was to make it clear that the Note payments were covered and that TGE was moving into the Property. But, on July 24, Tim Connolly communicated to the Ayeds and other, excluding the Appellants, that he had the foreclosure attorney set up to foreclose the property for the cost of $1000. Exhibit J. Clearly, he was planning to foreclose – despite the fact that the Rushing had said it was not allowed. Simply put, Connolly had a plan that involved the facility and he was going to get it one way or the other. That plan included taking over the facility, breaching the Binding LOI which it never intended to follow, preventing the Rushings from getting any notices related to the foreclosure in an attempt to take ownership and then kicking them out – which is exactly what happened.

## II.
## SUMMARY OF THE ARGUMENT

The facts are that the Appellants owned a Facility and Equipment before dealing with Appellees. Seven months later, Appellees claimed to legally own everything and Appellants received nothing for it and were simply locked out with nothing. Justice and equity serve to prevent this type of injustice.

11

It is about as clear as it gets that the foreclosure sale was improper, both technically and because it was actively concealed. The summary judgment evidence, which was provided by Appellees, shows that there was no notice of time, which renders it improper as a matter of law. In addition, there are a lot of other defects as listed below. Then, there are fact issues such as TGE actively intercepting the notice and having it returned. In sum, the foreclosure sale must be set aside and judgment rendered in favor of Appellants..

There are other clear mistakes. The first being that the District Court ignored an open cause of action for promissory estoppels. The only order that might be applicable is based on a no evidence summary judgment motion that never mentions or seeks relief on promissory estoppel. The order is clearly defective for granting relief not sought and the cause of action is still valid.

There were other causes of action brought relating to the actions taken by Appellees. The court made errors with each and ignored fact issues. However, one issue that applies across the board to each issue is the fact that the District Court refused to compel discovery responses or depositions from the Appellees. It is improper to grant a no-evidence summary judgment motion when you are not allowed to take proper discovery.

12

The sanctions issue was also improperly addressed as it was based on Appellants attempts to extend a cause of action. It is not harassing or sanctionable to make a good faith argument to extend a cause of action. Here, Appellants sought to extend a conspiracy to commit fraud cause of action to a puppet master that controlled and profited from the conspiracy but never had direct contract with the defrauded party. If the argument is colorable, even if not applied to extend the current case law, it is sufficient and sanctions were not proper.

The attorney fees award in this matter is based on a non-segregated fees request which is improper and in direct conflict with case law stating attorney's fees may not be granted in without trial.

## III.
## ARGUMENT AND AUTHORITIES

### Point of Error One

The District Court committed error by granting summary judgment on the issue of foreclosure:

    a) the evidence attached to the Appellee's summary judgment motions establishes the foreclosure was improper. As such, the summary judgment in favor of Appellees should be set aside and this Court court should render a judgment in favor of Appellants.

    b) the foreclosure was also improper because the evidence presented established Appellees blocked the notice of foreclosure and made it impossible to make payments.

    c) the foreclosure was also improper for a variety of other reasons.

The Court erred by granting the motion for summary judgment because TGF

and Hendry, as well as CSB, did not meet their burden of proving, as a matter of law, the elements of foreclosure. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000); *City of Houston v. McDonald*, 946 S.W.2d 419, 420 (Tex. App.—Houston [14th Dist.] 1997, writ denied). Unless the movant meets its burden, the burden never shifts to the nonmovant. *M.D. Anderson*, 28 S.W.3d at 23; *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex. 1989); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). The Court erred by granting the motion for summary judgment because Appellants raised a fact issue on the element of foreclosure. *Jones v. Tex. Pac. Indem. Co.*, 853 S.W.2d 791, 794 (Tex. App.—Dallas 1993, no writ). The Court also erred because the "Notice of Posting" letter mailed to Appellants was defective on its face because there was no time for the sale in the letter. Property Code 51.002(c). In addition, there are several reasons that the foreclosure was improper as listed below.

Strict Compliance

"Because sales by mortgagees and trustees under powers are more liable to abuse, they are more zealously watched by courts of equity, and upon slight proof of unfair conduct or violation of the powers given by the instrument, they will be set aside. While it is true that the presumption of regularity exists generally in favor of

14

judicial sales, it is well-settled that no such presumption prevails as to trustee's sales under powers granted by deeds of trust, the reason for the rule being that the exercise of such powers is a harsh remedy and that it can only be exercised by strictly complying with the terms and conditions imposed upon the power of sale by the maker of the trust instrument." *Sullivan v. Hardin*, 102 S.W.2d 1110 (Tex. Civ. App. 1937); *Smith v. Albright* (Tex. Com. App.) 288 S.W. 178; *Allbright v. Smith* (Tex. Com. App.) 5 S.W.2d 970; *Reisenberg v. Hankins* (Tex. Civ. App.) 258 S.W. 904, 910. Simply put, there is no presumption to benefit the trustee. As such, when a sale has an error, it must be set aside. Here, there are multiple errors, the sale must be set aside.

The Evidence Shows Mailed Notice Was Defective

Any defect is sufficient to set aside a foreclosure, especially in a situation such as we have here when the value of the foreclosed property greatly exceeds the amount claimed on the lien. CRI 1688-1694. The only evidence presented to the Trial Court of the notice mailed to D&R was filed by CS Bankers, who filed two affidavits identifying the notice that was mailed to D&R. Appendix J; CRI 122-126; first MSJ attempt: 439-448, Granted MSJ. Both affidavits identify three pages – and only three pages as being mailed. Id. On page two, the "Notice of Posting" letter references an attachment, but no such attachment was ever included – and the affidavits have

15

verified this fact twice (this makes sense because the attachments could not have been prepared on the 13th since Schlanger was not trustee until a day later). Since the attachment was not included, the notice is defective:

**1 – It fails to identify the time of the sale as required under Section 51.002(c). This one fact that Appellees evidence has established requires that judgment be rendered in favor of Appellants.**

2 – It fails to identify the location of the sale as required by Section 51.002(b)1.

3 – It fails to identify the substitute trustee. Section 51.0075(e) of the Property Code requires that the notice provide a name and address for the substitute trustee. Here, the letter does include the name and address of Schlanger, but it fails to actually identify him as the substitute trustee that is going to conduct the sale.

4 – The Notice of Posting identifies Schlanger as a "debt collector" trying to collect a debt. At the same time on the posting notice filed with the property clerk, Schlanger is claiming to be the substitute trustee and, in fact, conducted the foreclosure sale as substitute trustee. However, Section 51.0075(b) prohibits him from acted in both capacities – "A trustee or substitute trustee is not a debt collector." Section 51.0074(b)1 further clarifies that "A trustee may not be: (1) assigned a duty under a security instrument other than to exercise the power of sale in accordance with the terms of the security instrument." Thus, Schlanger is not allowed to act as trustee and

16

perform other duties such as debt collection and acceleration. The letter he sent to Appellants claimed he was a debt collector and that he was accelerating the debt. As such, any later actions he took as a substitute trustee should be invalid – or the actions taken in any other capacity should be invalid. Clearly, one cannot simply have dual roles at the same time or change their role back and forth to claim the protections afforded by the rules and not be bound by them. Here, Schlanger sent a letter claiming to be a debt collector at the same time that he filed notices at the courthouse claiming to be trustee. If Schlanger would have attached the "Notice of Substitute Trustee's Sale" to the Notice of Posting then he would be claiming a dual role in the same letter. The Rule is clear - - - you cannot have a dual role. Thus, the actions and notices should be found improper and set aside.

Again, Appellants presented their summary judgment motion on this issue. CRI 2905-3022. Appellees did not even provide an exhibit in their response related to this point or contest the issue. CRII 951-967. Appellees finally addressed this issue in its supplement response to a new trial request – by claiming "the Rushing Defendants intentionally present the Court with an incomplete copy of the letter." Appellants simply presented the sworn evidence that Appellees presented in both of their summary judgment motions. Appellees also attached a non-sworn copy of the Notice of Posting claiming the Notice of Substitute Trustee's Sale was attached. First,

17

it is not sworn and is not evidence. Second, the sworn evidence says the attachment was left off by Schlanger – not by the "Rushing Defendants." It is too late to doctor the evidence – Schlanger did not include the attachment and it is defective. The evidence and black letter law demand judgment be rendered for Appellant finding the foreclosure notice and sale improper.

Evidence Shows Notice was Blocked and Fact Issues Abound

The Court erred by granting the motion for summary judgment because there is a disputed fact issue about the foreclosure being improper, including notice of the foreclosure by CSB being fraudulently blocked from delivery, which must be submitted to the jury. *See Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 511 (Tex. 1995).

*Wrongful Interference*

Appellees stated only half of the facts when they claimed that they gave Defendants and D & R notice of the foreclosure. A defective notice letter was sent in the mail, but TGE personnel working at the Property refused to sign for the letter and falsely advised the postman that D&R no longer was there. CRI 464-536. By intervening to prevent Defendants and D & R from receiving the foreclose notice, Plaintiffs failed to comply with Section 51.002's notice requirements. Under Texas law, when one party's wrongful interference prevents the other party's performance of

18

a contract, not only is the other party's performance excused, but the interfering party has committed a breach of contract for which the other party may recover damages sustained from the breach. *Longview Constr. & Dev., Inc. v. Loggins Constr. Co.*, 523 S.W.2d 771, 779 (Tex. Civ. App.—Tyler 1975, writ dism'd by agr.). In this case, even though the lease had been executed by TGF, TGE was occupying and running the business located at the Property. CSB has identified itself as an affiliate. As such, it effectively sent notice to itself – not to D&R. Then, it refused acceptance of the certified mail claiming D&R was not at that address and no forwarding address was available. Oddly, TGE allowed the Rushings, who were working there, to receive other mail for D&R at that address during this time period. Id at 482-485; Exhibit A. But, as shown in the attached booklet and affidavit, the notation on the letter shows that "Delivery Attempted, addressee not known at place of address."
CRI 510-516; Exhibit G, USPS Booklet. So, CSB and TGE fraudulently prevented the notice from getting to D&R by refusing the notice.

Section 51.002 requires a creditor to provide notice to the debtor notice of a pending foreclosure sale. Section 51.002 and its predecessors were enacted to stop the sort of abuse that Plaintiffs are attempting to perpetrate here. *See Armenta v. Nussbaum*, 519 S.W.2d 673, 677-78 (Tex. Ct. App. 13th Dist. –1975); *see also Wylie v. Hays*, 263 S.W. 563, 567 (Tex. 1924). I n the late 1800's creditors, routinely preyed

19

upon defaulting property owners by deleting notice requirements in deeds of trust, and holding foreclosure sales in counties distant from the property. *See Armenta*, 519 S.W.2d at 677-78 (phrasing the creditors acts as "an evil that was calculated to work against the public welfare"). Although Section 51.002 creates constructive notice when the creditor deposits the foreclose notice in the mail, the long history of Texas foreclosure law shows that the creditor cannot then prevent actual notice and seize the property.

*Texas Law Permits the Admission of Evidence that Plaintiffs Prevented Delivery of the Foreclosure Notice.*

When analyzing whether a party's evidence is legally sufficient to raise an issue of fact, a court looks to whether the evidence would ultimately be admissible at trial, and whether it would "enable reasonable and fair-minded people to reach the verdict under review." *See Adebo v. Litton Loan Servicing, L.P.*, 2008 Tex. App. LEXIS 3935 at *10, No. 01-07-00708-CV (May 29, 2008). When a debtor alleges that the creditor failed to comply with Section 51.002's notice requirement, the debtor must show that the creditor failed to serve the foreclosure notice. *Id.*

Here, Defendants and D & R alleged that Plaintiffs failed to meet the notice requirements of Section 51.002 because Plaintiffs prevented Defendants and D & R from receiving service. As stated above, despite Plaintiffs' claiming to conform with Section 51.002(e)'s enumerated provisions, Plaintiffs cannot meet Section 51.002's

20

service requirement because they prevented the notice from reaching Defendants and D & R. Consequently, Defendants and D & R have shown that 51.002(e) is not a legal defense to their counterclaim, and thus 51.002(e) does not bar their evidence showing that Plaintiffs wrongfully foreclosed the Property due to insufficient notice. *See Adebo*, 2008 Tex. App. LEXIS 3935 at *10-11. Defendants' and D & R's evidence of Plaintiffs' interference with the foreclosure notice's service would be admissible at trial, and given every reasonable inference, is sufficient to raise an issue of fact to be resolved by a jury. *See Limestone Prods. Distrib., Inc.*, 71 S.W.3d at 308. As such, summary judgment must be set aside.

**Other Defects**

*No Amount Due* A fact that must be established before a party is able to foreclose is that there is a legal basis upon which to foreclose. In other words, there has to be a legal instrument that gives a party a right to foreclose in certain circumstance and those circumstances exist. In this case, there is no amount due – which means there was no right to foreclose. Essentially, in July of 2012, three things happened as part of one transaction: the note was assumed, the Binding LOI was executed and the lease was signed. The purpose of the Lease was to work hand in hand to insure the Note was paid and Appellants did not have to worry about ownership of the Property. CRI 482-485; Exhibit A. TGE took possession of the Property and was legally bound to

21

pay the Lease (note that TGF lease so tie it in and boost it up). If the Note is not in default, there is no basis to foreclose. *Brown v. Cates*, 99 Tex. 133 (1905). The debt is the "principal thing." *Duty v. Graham*, 12 Tex. 214 (1854). Thus, claiming a debt is owed because it breached by not paying itself should not be a basis for foreclosure. Appellants contested that there was any amount due and Appellees failed to establish any amount due. In fact, there is never a number presented anywhere. Thus, since there is a fact issue as to whether there is any amount due, the summary judgment must be set aside.

## CSB violated the Deed of Trust by not notifying the Guarantors.

Section 14c of the Deed of Trust requires notice to all debtors obligated to pay the debt G. CRI 517-535; Exhibit H, Deed of Trust at page 9. Exhibit A-1, a modification of the Note, acknowledges the Guaranties by William Penn Rushing and Charles Leon Rushing. No such notices were ever sent. Id. In and of itself, this failure of notice is a breach of the deed of trust. Thus, not only was the deed of trust violated, the foreclosure notice is inaccurate and defective.

## CSB did not notify D&R of its purchase, address, balance, etc.

The original injunction in this matter required CSB to present its full "foreclosure file" and it has stated it has done so. Yet, the only communication in the file is the foreclosure notice. This lack of documentation shows CSB did not

22

accelerate the loan, notify that it would accelerate the loan, ask for a payment or even notify D&R that a payment may be due. CSB failed to provide any D&R with an address which made it impossible for D&R to provide a change of address or make a payment. Id; Affidavits. Appellants, due to the lease that was in place, did not believe any amounts were due and did not receive any invoice or demands for payment which would support the fact that no amounts were due. Id.

The previous lender may have accelerated the loan years prior – but had taken payments and rescinded that acceleration. Id. In fact, the previous lender had sent a notice that it would accelerate if payments were not made – but never accelerated. Id. So, at the time that CSB purchased the loan the loan had not been accelerated no demand other than the normal billing statements had been received. After CSB purchased the Note, D&R did not receive any correspondence no demands for payment, no invoices,   – no amounts were due and no amount had been demanded. True, according to the terms of the Note, payments should have become due and the previous lender had even sent statements to that regard prior to the transfer – but no action was taken by the lender with that regard. CSB simply refused to notify D&R that it had bought the Note or provide information which would show an amount was due and where it could be paid. In short, CSB made it impossible to perform.

*The Notice Letter is Defective and CSB acted in bad faith*

23

Even of the Notice of Foreclosure had not been blocked by CSB, the notice was defective beyond the fact that no time was given. Even if the Notice of Foreclosure had not been blocked by CSB, the notice was defective. In a foreclosure situation, even a small error is a basis to set aside the foreclosure. *Harwath v. Hudson*, 654 S.W.2d 851, 853 (Tex. App. Dallas 1983) *citing Slaughter v. Qualls*, 139 Tex. 340, 162 S.W.2d 671 (1942).

The notice letter has several errors:

-Introductory Paragraph states it is a Texas company which is incorrect. CSB is a Nevada company and there is no such company in Texas. Thus, the notice is for a company that does not exist and is invalid.

-Paragraph 1 states D&R was notified of a default, that the default had not been cured and the cure period had expired. Again, CSB never sent a notice of default (or demand for payment). There was no cure period provided. The entire paragraph is incorrect. Id.

-Paragraph 2 states the "entire amount" is due but fails to provide an amount. It further states it is due under the terms of the Note – which does not provide for payment to CSB or an address for CSB.

-Paragraph 3 states to "contact the lender" for the amount due and costs that are being added on. However, again there no contact information for the lender and the lender

is incorrectly identified as a Texas Company. There is no phone number to contact CSB. Simply, it was impossible to perform.

-Paragraph 4 and 5 generally references Lender without providing information.

-Paragraph 6 purports to be a notice of default and an acceleration – without identifying what it is accelerating, what amount was in default, the total amount or what amount is due.

-Paragraph 7 grants D&R the right to reinstate after acceleration. But, again, provides no amount or information which would allow reinstatement. Also, taken in context with paragraph 6 claiming to be an acceleration, grants a right but in a method where it is impossible to perform.

-Paragraph 8 acknowledges it is required to give notice to the guarantors and states it is providing notice to "each guarantor." But, it simply did not do so. Id.

So, out of 9 paragraphs, 7 are incorrect and the other 2 simply do not provide information which should be in the notice. Seriously, how can you provide a valid notice of default without identifying the amount in default, the balance or how to cure. Especially when you acknowledge you are allowing cure in paragraph 1 – but then fail to state how to cure, where to cure and incorrectly state who the cure should be made with. CSB executed a lease making no amount due and misled D&R into believing that no amount was due, and further made it impossible for D&R to make a

payment or obtain any information regarding the Note. Then, it sent a defective notice in its attempt to foreclose.

Final summary of foreclosure errors:

- All evidence established notice of posting attachment was not sent, which establishes the notice mailed did not include a time for the sale, identify the trustee or location.
-The Posting Letter and posted Notice identify a Texas company that does not exist (CS Bankers is a Nevada company to was not in good standing at the time of foreclosure).
-Paragraph one of the Posting Letter incorrectly states D&R was notified of default and a cure period – when in fact, no contact had ever been made by CS Bankers.
-The Posting Letter demands the "entire amount," but fails to state a number – or who to pay, or where.
-Paragraph 8 claims it is noticing each guarantor, as required by the deed of trust and Section 51.002(b)3, but no such notices were ever sent.
-No amount was due under the Note. The joint venture included no payments being due and lease executed by TGE and D&R was to show all payments were covered.
- Property Code prevents Schlanger form acting as substitute trustee and debt collecter.
-Wrongful interference – TGE blocked delivery of the notice. These actions deem the notice and foreclosure invalid. At the very least, this is a fact issue to be presented to a jury.
-No notice to guarantors – The code and deed of trust required notice to each debtor, still no such notice was provided – even thought the notice letter said it was sent.
-Impossibility of Performance  - CS Bankers never contacted D&R, never made a payment demand, never provided information by which it could be contacted, never provided an address for payments, never provided an address by which D&R could provide written notice of a change of address, etc. Simply put, CS Bankers hid from D&R and made it impossible for them to be contacted.

Any one of these errors is sufficient to set aside the foreclosure sale. The additional fact that no time, no address of sale and no identification of new substitute trustee was provided, simply shows how much was hidden. The Court should set

26

aside the foreclosure order, all orders related to it and render a decision that the foreclosure was improper for each of the reasons above.

## Point of Error Two

**Point of Error: The district court committed error which caused the rendition of an improper order when it entered judgment dismissing the Quiet Title cause of action. Since the foreclosure was improper, the quiet title cause of action should also be set aside and the issue resolved in accordance with the foreclosure ruling.**

Quiet Title is related:

The issue of quiet title is secondary and follows any ruling related to foreclosure. As noted in Appellants live petition, the property in dispute is now owned by TGF – even though it was foreclosed by CSB. RRI 781-800. As such, it would be improper to dismiss the quiet title action until the foreclosure action is addressed properly. In addition, there are no claims against TGF and Hendry regarding foreclosure – only that they conspired with CSB and later ended up with the Property. There are no counter claims or affirmative defenses to the cause of action. As such, there is no basis for the relief granted on the Order issued by the trial court. This court should render a finding that since the foreclosure was improper, title should be quieted back in favor of D&R.

## Point of Error Three

27

**Point of Error: The district court committed error by ignoring at least one cause of action and signing orders exceeding the relief requested in summary judgment motions**.

Plaintiff's multiple summary judgment motions fail to address the promissory estoppel claims at all. (see all summary judgment motions) In addition, the breach of the lease agreement is not addressed. Therefore, at a minimum, the promissory estoppel claims are still outstanding against Plaintiffs in addition to the any other outstanding claims that were not granted by summary judgment.

The Order Exceeds Requested Relief

The Order signed on February 3, 2015, dismisses all of Appellants' claims against TGE, TGF and Timothy Connolly. RRI 2027. The summary judgment motion never mentions promissory estoppels – which was an outstanding cause of action. RRI 1346-1375 This order exceeds the relief sought because it dismisses claims which were not mentioned in the no evidence motions for summary judgment. Id.

Specifically, the last amended petition states:

> The acts above show that D&R and the Rushings were deprived of their property, business and livelihood due to the actions and promises of the TGE, TGFI, TGF, TC and CSB. Under quantum meruit and promissory estoppel, D&R and the Rushings seek the return of their business and property or at least monetary damages equivalent to the loss of services, material and property.

RRI 781-800. Clearly, promissory estoppel appears as a cause of action based on this

language. Clearly, it is not even mentioned in the no evidence motion for summary judgment. Thus, the order granting the motion exceeds the relief sought and is improper. In addition, there are no other motions or orders that should apply to the promissory estoppels cause of action and the case should be remanded for it to be addressed.

## Point of Error Four

**Point of Error: The district court committed error which caused the rendition of an improper temporary injunction when it granted no-evidence summary judgment and did not compel discovery responses.**

<u>Inadequate Time for Discovery</u>

It is clear that the Court erred by granting the no-evidence motion for summary judgment because there had not been adequate time for discovery. Tex. R. Civ. P. 166a(i). Specifically, Appellants requested discovery and it simply was not produced – and depositions were quashed. At the time the summary judgment motions were filed, parties were still well in the discovery period which did not expire until 2015. Appellants timely sought to compel discovery and the Court refused to rule. While it appeared that this case had been on file for quite a while, docket control orders were in place prohibiting discovery for most of the case (due to removal and remand early in the case). Even after a new docket control order was entered in January of 2014, there were multiple parties that were not served (some were never

served) and discovery was delayed waiting for those parties. Simply put, the Order should be set aside because the discovery period still had not concluded and Appellants were attempting to force responses because the responding parties simply refused to sends responsive documents and quashed the deposition notices.

**Point of Error Five**

**Point of Error: The district court committed error which caused the rendition of an improper order when it entered summary judgment on fraud, breach of contract, quantum meruit, negligent misrepresentation, breach of fiduciary duty, conversion, conspiracy, and tortuous interference**.

Each of these causes of action, except breach of contract, was ruled on as a no evidence ruling. There was evidence creating a fact issue with each as shown below. CRI 1593-1715 (argument below refers the exhibits numbers for easier reference within these pages). In addition, there was evidence showing a contract (the BLOI) and the evidence presented was not sufficient to grant summary judgment on this issue. CRI 1716-1839 (same).

*Fraud*

Connolly and TGE provided the Appellants with various deal offers and met with them discussing their Facility. CRI 1593-1715: Exhibits E (RRI 1649), H (RRI 1654), I (RRI 1670); Affidavits at RRI 1608-1609. TGE provided representations through its officers Craig Crawford (Crawford") and David Mathews ("Mathews") as

30

well as Connolly who, as shown below was a manager and owner of CSB as well as a negotiator for TGE. Exhibits E; Affidavits. Connolly was an agent of TGE as well as CSB and operated for himself. Exhibit C (RRI 1617), H. Connolly, Crawford and Mathews knew the deal could not be performed as offered and only made such offers to induce the Appellants into a deal where Appellees could take the Appellants Facility, labor and Personal Items ("Assets") Exhibit I, K (RRI 1677). Mathews even discusses that the deal needs to be redone but acknowledges TGE owes the Rushings the first $100,000 that is coming due – which was never paid. Id. Connolly even promised that the TGE stock Appellants would receive would be worth around two million dollars – and it was never delivered. Exhibit H. A lease was executed wherein payments to CSB were to be satisfied and no payment would be due on the Note. Exhibit D. Crawford and Mathews promised that there was a backlog of business and that the joint venture would be so profitable that Appellants would make $34 million dollars. Affidavits. The Appellants relied upon the representations and have lost their Facility, labor and Personal Items to Appellees because they believed the assertions put forth by Connolly, CSB and TGE representatives. Affidavits. Simply put, Crawford, Mathews and Connolly, on behalf of themselves as well as TGE and CSB, made direct representations to the Appellants which were either totally false – or so far fetched that he knew that what he was promising was impossible and

31

those promises led to the Appellants losing their Assets which were taken for the benefit of Connolly, CSB and TGE. At a minimum, the evidence presented creates a fact issue for a jury.

*Negligent Misrepresentation*

As shown, TGE and Connolly received compensation. Exhibit G (RRI 1654), L (RRI 1679). Connolly participated in the dealings between Appellants and Appellees and proposed deal points that were not possible and were clearly nothing but an incentive for the Appellants to deal with the Appellees. Exhibit H, E. Crawford, Mathews and Connolly made promises and executed a binding LOI leading Appellants into tendering their Assets for use by the joint venture. Affidavits. TGE, through Crawford and Mathews, represented a backlog of business which would create a large amount of revenue. Affidavits. Connolly joined in and encouraged this position by referring to possible income. Exhibit H. TGE and Connolly also represented that the TGE stock that the Appellants would receive was worth over two million dollars. *Id.* Based on these representations and more made by Appellees, Appellants entered into the transaction with the Appellees and suffered the loss of its business, Facility, labor and Personal Items. Affidavits. Sadly, despite acknowledging the $100,000 debt, it was never paid. Exhibit K. The evidence is and was sufficient to create a fact issue for a jury.

## Breach of Contract

Connolly made promises though himself and TGE. Affidavits (RRI 1726-1730); Exhibit E (RRI 1769), H (RRI 1786). Appellees have claimed the binding letter of intent is not sufficient since it was not formalized into a more comprehensive agreement. The only reason the contract was not formalized with a more complete writing is the bad acts of Appellees – they simply refused to finish the paperwork once they got what they wanted. TGE secretly acknowledged its debt and desire to redo the deal. Exhibit K. Laches and unclean hands serve to prevent Appellees from being able to profit from such underhanded dealings. Specifically, Appellees are hoping to profit from improperly refusing to finish the paperwork or make payments which was their responsibility under the BLOI. To allow them to avoid liability under the contract would be inequitable and a clear example of one profiting from its own bad actions – a situation laches and unclean hands directly prevents.

Under Texas law, when one party's wrongful interference prevents the other party's performance of a contract, not only is the other party's performance excused, but the interfering party has committed a breach of contract for which the other party may recover damages sustained from the breach. *Longview Constr. & Dev., Inc. v. Loggins Constr. Co.*, 523 S.W.2d 771, 779 (Tex. Civ. App.—Tyler 1975, writ dism'd by agr.). In this case, Appellees interfered with the BLOI and prevented it from being

33

refined into a comprehensive agreement as set out in its own terms. Affidavits. As such, Appellees may not claim the contract does not exist.

Even if the BLOI is found to not be complete, in such a case, the parties must look at the situation where there is clearly a contract, even if it is not clearly defined by writing. This situation is referred to as Quantum Meruit or Quasi contract – which are the same. In this case, TGE and its agents negotiated the binding LOI and is clearly involved in either the binding LOI or a quasi contract/quantum meruit situation because it took the benefits of the bargain from the Appellants. TGE acknowledged the debt under the BLOI where is discusses the $100,000 it is about to pay the Rushing (email sent during the 10 days after execution before the payment was due). Connolly took benefits of the bargain and was directly involved in moving the title of the real property by foreclosure while avoiding the execution of a real estate contract. Connolly, as manager of everyone involved, also took the benefits of the bargain as shown by the separation agreement of CSB. Exhibit G. So, in this case, it is clear and undisputed that the Appellants performed and tendered their Facility, Assets and services to the Appellees and suffered the loss of the Facility and Assets. Affidavits. Appellees breached by not performing under the Binding LOI. Affidavits(RRI 1726-1730). In addition, even if the Binding LOI is found to not be complete, then there is a quasi contract/quantum meruit situation created by the actions of the parties.

34

*Quantum Meruit*

As shown above, The Rushings provided services, equipment and real property to the Appellees. CRI 1593-1715;1716-1839. These items were taken and used by the TGE, CSB and Connolly while they were aware that the Appellants expected compensation. See Attached Affidavits; see Exhibits H, E, K. In the end, TGE and Connolly profited by taking Appellants Assets to the detriment of the Appellants.

As shown in the facts above, Appellants expected a lot of compensation for getting involved with Plaintiffs. Not only was there immediate cash ($100k never received that was due in 10 days) but there was also supposed to be $34 million in value. Exhibit E, K. It is undisputed that Appellants provided their property, real and personal, located at the Property. It is undisputed that the Property has been used for the benefit of TGE and Connolly. Affidavits; Exhibits C, D. As discussed above, each of these parties were aware of the LOI and that the Appellants expected compensation for their contribution – it would be insane to claim that the Appellants were simply donating their Property, personal property and time. Affidavits; Exhibits H, E. As such each element is satisfied and this cause of action stands.

Quantum Meruit is Applicable for Damages for Loss of Real Property

The Trial Court accepted the idea that Quantum Meruit only applied to loss of items and labor, not real estate. It did not consider a situation where loss of property

35

is the largest part of damages. There was no deed of trust or other transfer of the deed of the property in this case. This is a deal where the Appellants agreed to work with the opposing parties and allow them the use of their facilities and during that time the opposing parties took possession of the real property and then foreclosed it. All of which would not have been possible if the parties were not working under a binding letter of intent.

If the binding letter of intent fails, then this becomes a quantum meruit situation since no contract would be in place to control. There are no exclusions for real property in quantum meruit – only for contracts. Quantum meruit is in place to compensate a party that put forth value to its detriment where the other party has profited off of its contribution – such as this case. And, Promissory Estoppel would be the next backup position. In short, those three cause of action should work in hand to cover all possibilities.

The law is clear that "(where) there exists a valid express contract covering the subject matter, there can be no implied contract," and hence no recovery in quantum meruit. *Woodard v. Southwest States, Inc.*, 384 S.W.2d 674, 675 (Tex. 1964). It is black letter law that a contract for the transfer of land must be in writing. As such, a typical real estate transaction requires a contract – to be enforceable under the statute of frauds. Thus, in a typical real estate transaction, quantum meruit would simply not be

applicable – but this does not mean it will not apply in a non-typical transaction. Such as the situation here where the opposing party took possession of the real property without a written contract. In this case, Appellants seek to recover under a contract – but opposing parties are claiming no contract exists. In such a situation, Appellants must seek recovery under alternative causes of action and since the real property was not covered by contract – it falls into a quantum meruit cause of action. "The expected payment does not have to be monetary; it may be any form of compensation. Accordingly, quantum meruit recovery has been allowed when the original payment sought was an interest in land, *Miller v. Graves*, 185 S.W.2d 745, 1945 Tex. App. LEXIS 649 (Tex. Civ. App. 1945), writ ref'd), and the devise of a residence. *Scott v. Walker*, 141 Tex. 181, 170 S.W.2d 718 (Tex. 1943)." *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942 (Tex. 1990).

It is true that an express contract and quantum meruit are distinct and different relationships and inconsistent ideas, but the same record may contain evidence which will support either theory. A plaintiff may allege both theories and recover as the evidence may show. *Clower v. Brookman*, 325 S.W.2d 440 (Tex.Civ.App. -- San Antonio, 1959, no writ). As Williston explains, "in situations involving true contracts"—those created by "promise or mutual assent of the parties, express or implied"—"the parties' rights are determined by law and by the terms of the contract;

37

by contrast, when quasi-contract [i.e. quantum meruit] is involved, liability is determined by principles of equity and justice and the intent of the parties is immaterial." Williston, § 1:6; *see Ferrous Prods. Co. v. Gulf States Trading Co.*, 323 S.W.2d 292, 296-97 (Tex. Civ. App.—Houston, 1959), *aff'd*, 160 Tex. 399, 332 S.W.2d 310, 312 (Tex. 1960). Thus, "[a] court properly resorts to quasi-contract only in the absence of an express contract or contract implied-in-fact." Williston, § 1:6.

The right to recover on quantum meruit does not grow out of the contract, but is independent of it. It is based upon the promises implied by law to pay for consideration rendered and knowingly accepted. *Colbert v. Dallas Joint Stock Land Bank of Dallas,* 129 Tex. 235, 102 S.W.2d 1031-1034 (1937). When there has been partial performance and an acceptance of the benefits, if any, arising there from by the other party, then a recovery can be had for a quantum meruit; not by force of the contract but independent thereof. *Gonzales v. McHugh*, 21 Tex. 256. In this case, TGE has admitted the parties acted as if an agreement was in place and in that process ended up receiving services from the Rushings and ownership of the real property – which was the key element of the entire deal since it was not possible to have a joint venture of any kind without the real property.

Many Texas cases speak of an "express" contract barring recovery in quantum meruit, courts have recognized that contracts in which some or all of the terms are

38

implied-in-fact will also bar recovery in quantum meruit. This rule makes jurisprudential sense because "mutual assent" is present in a contract "[r]egardless of whether [it] is based on express or implied promises," and courts will not override mutual assent by imposing a different bargain on the parties in quantum meruit. *Excess Underwriters at Lloyd's, London*, 246 S.W.3d at 50; *Dallas Elec. Supply Co. v. Branum Co.*, 143 Tex. 366, 185 S.W.2d 427, 429 (Tex. 1945). Moreover, a contrary rule that only express contracts in which every single term is stated by the parties can bar recovery in quantum meruit would be extremely difficult to administer.

In other words, if the opposing parties had a contract for transfer of the real property for which Appellants are seeking or a contract covering their dealings, then that would preclude a quantum meruit claim on that property. Anything short of that is simply not a proper basis to deny recovery under quantum meruit or promissory estoppel.

*Breach of Fiduciary Duty*

Joint venturers owe a fiduciary duty to each other in dealings within the scope of the joint venture. *Rankin v. Naftalis*, 557 S.W.2d 940, 944 (Tex. 1977); *Fitzgerald v. Hull*, 237 S.W.2d 256, 264 (Tex. 1951). In addition, partners are fiduciaries. Indeed, "it is well established in Texas that the mere failure of [a party] to disclose to [a co-venturer] all aspects of their inducement in the transaction is in itself a breach of

39

his fiduciary duty". *Kirby*, 688 S.W.2d at 165. It is clear that Connolly and TGE breached their fiduciary duty to the Appellants when they foreclosed on the Facility, when they attempted to negotiate other deals, when they profited, when they simply refused to pay under the BLOI, when they caused the comprehensive agreement to not be provided and when they did not deal with the Appellants with integrity. CRI 1726-1730, 1608-1610; see Exhibits K (CRI 1675) (acknowledging $ not paid), M. They did all these things while Appellants were led to believe they were acting under a binding letter of intent. Id. A party that knowingly induces a breach of fiduciary duty or participates can be held liable as a joint tortfeasor. *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942). "Under Texas common law, if a third party knowingly participates in a defendant's breach of a fiduciary duty owed to a plaintiff, the third party is jointly liable with the defendant for damages to the plaintiff proximately caused by this breach of fiduciary duty, and the plaintiff has the same equitable remedies against the defendant and the third party based upon this breach." *Hunter Bldgs. & Mfg., L.P. v. MBI Global, L.L.C.*, 436 S.W.3d 9, 15-16 (Tex. App. Houston 14th Dist. 2014). Thus, since Connolly and TGE worked together as mutual agents and to profit off of the Appellants, they are jointly liable.

These actions caused the Appellants to lose their Facility, personal items, equipment and the value of their services for the joint venture – directly to CSB and

TGE who profited off of the transaction. Affidavits. Clearly, Appellants suffered and Appellees directly profited despite being in a fiduciary relationship. The evidence shows at least a fact issue and this issue should be remanded for further proceedings.

*Conversion*

The Rushings owned equipment, personal items and various other items, including a sound studio (the "Personal Items"), that was located at the Facility. CRI 1726-1730, 1608-1610. Only D&R Constructors signed the Deed of Trust, and consequently that document only reaches personal property owned by D&R Constructors. The Deed of Trust cannot reach the personal property of Appellants Michael, Florence or Penn Rushing that was at the Property. In addition to the personal property located at the Property, on January 28, 2013, this Court ordered Appellants to return personal property which had been removed back to the Property until a final disposition in this case. Some of the returned personal property belonged to Michael Rushing. Id. Accordingly, they took possession of the Property, they also took possession of Michael Rushing's personal property – and were subject to the injunction for the returned property as well as the property that had not been removed which belonged to the Rushings. Since then, the property has not been returned to the Rushing and much of that property has been disposed of and is no longer at the Property. CRI 1609.

41

Connolly, personally and as agent and manager for CSB and TGF, had direct control of the location and property for a period of time. CSB owned the Facility under the TGE umbrella as shown above. The Personal Items have not been returned and they were personal property of the Appellants. CRI 1726-1730, 1608-1610. Appellees each had control over the item and have not returned them – in fact, Appellees have claimed they trashed many of the personal items. Id. Accordingly, there is at least a fact issues and this cause of action stands should stand as asserted.

*Conspiracy*

A cause of action for conspiracy requires: 1) two or more persons; 2) an object to be accomplished; 3) a meeting of the minds on the object or course of action; 4) one or more unlawful, overt acts; and 5) damages as a proximate result. *Chon Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005).

Here, the basic elements are met since Connolly is an agent for all Appellees, CSB, TGE and Connolly. Since each is charged with awareness, there is clearly a meeting of the minds on any actions taken. So, the parties had a meeting of the minds on the subject since they reached deals where money was paid and property was transferred – to Appellees benefit and to Appellants harm. Affidavits; *See* Exhibit G (CRI 1654). Damage is clear since the Appellants were deprived of their Property, real and personal, in addition to their family business. CRI 1726-1730, 1608-1610;

42

Exhibit N, Expert Report (CRI 1688-1694). The only other element in question is regarding the unlawful or overt acts which is addressed within the rest of the motion (ie fraud exists therefore conspiracy to defraud exists and so on). Thus, for each active cause of action, there is evidence that conspiracy stands.

In this matter, Smith did not directly participate in the fraud since he never had direct contact with the Appellants. However, the emails and other evidence indicate he is the puppet master of the entire conspiracy to defraud. Appellants propose that a conspiracy to defraud cause of action should apply to a puppet master who is directing the activities of others and profiting from their actions as was alleged in this matter. As such, the cause of action for conspiracy to defraud should be extended to cover a puppet master and this claim against Smith should be remanded for further proceedings.

*Tortious Interference*

Tortious interference with contract requires: 1) a valid contract, 2) the defendant willfully and intentionally interfered with the contract, 3) the interference proximately caused the plaintiff's injury, and 4) damage. Here, Appellants held a lease with the joint venture, which leased the Property from D&R Constructors, Inc. Exhibit D (CRI 16291648). Appellants also held a joint venture contract with TGE. Exhibit E (CRI

43

1649-1651). Tortious interference requires only that the defendant had knowledge of facts and circumstances that would lead a reasonable person to believe there was a contract in which the party had an interest. *Kelly v. Galveston County*, 520 S.W.2d 507, 513 (Tex. Civ. App. Houston 14th Dist. 1975); s*ee also, e.g.*, *John Paul Mitchell Sys. v. Randalls Food Mkts.*, 17 S.W.3d 721, 730 (Tex. App. Austin 2000). Here, TGE, CSB and Connolly knew that Appellants and TGE were joint venture partners and had a lease for the Property. Here, it is clear that if the lease had been paid, then the foreclosure would be improper. By causing no payments, Connolly, CSB and TGE interfered with the lease. Connolly and CSB also interfered with the BLOI by causing it to never be memorialized as promised and doing other self dealing. CRI 1726-1730, 1608-1610., 1654-1686; exhibit G, L. Of course, planning to foreclose fourteen days after signing the deal without advising the Appellants is also a violation of disclosure, self dealing etc. CRI 1675; Exhibit J. Thus, there is at least a fact issue and this Court should set aside the summary judgment on this issue.

By negotiating with Hendry and Smith, Connolly and CSB caused TGE to breach the binding letter of intent, or the quasi contract status they were operating under, and due to that interference, the Appellants failed to receive the value of the contract and lost their real property, personal property and the labor they contributed to the joint venture with TGE. CRI 1726-1730, 1608-1610.

Intentional interference requires that the defendant intend to interfere with the contract. *Southwestern Bell tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992). For these purposes, the intent requirement includes inducing one party to breach an existing contract. *John Paul Mitchell Sys.*, 17 S.W.3d at 730-31. Here, Brian Hendry knew that Appellants and TGE, and Appellants and the joint venture, had contracts. CRI 1726-1730, 1608-1610; Exhibit E. Consequently, there is an issue of fact regarding whether Brian Hendry's offer to purchase the Property induced TGE to breach the Binding Letter of Intent, and breach the lease as a joint venture partner. Again, there are fact issues here that should be presented to a jury.

## Point of Error Six

**Point of Error: The district court committed error which caused the rendition of an improper order when it entered sanctions in this matter**.

There is a good-faith argument to extend existing law – therefore not "groundless"

A groundless pleading is one that has no basis in law or fact and is not warranted by a good-faith argument for the extension, modification, or reversal of existing law. TRCP13; *GTE Comms Sys. V. Tanner*, 856 S.W.2d 725, 730 (Tex. 1993). If there is sufficient basis to extend existing law to be applicable, the argument is not groundless. *Lake Travis ISD v. Lovelace*, 243 S.W.2d 244, 254 (Tex.App.—Austin 2007, no pet.). In this case, Appellants presented evidence showing Smith was

working with the other parties (emails showing meetings at his house, requesting release on his behalf, referring to him as investor, etc.). RRII 2421-2445. Appellants asserted that this situation, where a party interacts, or even controls, the other members conducting the fraud, that a conspiracy cause of action is valid even if there is no direct contact. While the Court is bound to follow current precedent, it is not sanctionable to present a good faith argument to challenge current precedent. In this case, if the fraud had been proven against the other members of the conspiracy, it would have been irresponsible to not have included the person that appears to be the puppet master. Thus, Appellants and Gore should have the opportunity to extend current law to cover this situation – and not be sanctioned for such actions.

A review of the pleading show that the "Third Amended Claims" as referenced in the Sanctions Order, only contains claims for conspiracy to commit fraud. The pleading:

Page 3: Emails established assertions regarding meeting at Smith's home were true (also referenced on page 5) and the quoted language was in the email attached to Response.
Page 4: Appellants presented transcript recording of Crawford negotiating to get Smith and Hendry a release – just as asserted in the pleading.
Page 5: "On information and belief, Lester Smith orchestrated and directed the, members of the Gulf Group to make the deal happen." This assertion, while admittedly in the fraud section, only asserts conspiracy.
Pages 14-15: The conspiracy section outlining the conspiracy allegation.

RRI 782-800. As such, if this Court finds that conspiracy to commit fraud should

apply to a puppet master who, while not directly committing fraud, directed the actions of other who did and profited from it, then the sanctions order must be set aside. Further, to set aside the sanctions order, it is not necessary for current law to be extended – it only has to be found that there is a basis to put forth the argument. Appellants believe it is proper to find a puppet master liable for conspiracy to commit fraud. There is no bad faith here and no evidence was presented showing there was. At the very least, it makes sense to include a puppet master and it is not bad faith to present the argument for extending current precedent.

So, again, Appellants assert there was no bad faith involved. Appellants are challenging existing law because it seems that a puppet master should have liability. As such, the claims are neither groundless nor made in bad faith.

Sanction Excessive and No Evidence on Attorney's Fees

Appellants object to any evidence presented regarding attorney's fees because Smith's counsel rested their case before any such evidence was presented. RR pg. 69. Claimant did not introduce evidence on attorney's fees during his portion of the hearing. Instead, there was testimony in between his closing and Gore's conclusion – which should not be considered evidence.

The testimony presented on attorney's fees was for Hendry and Smith together. There was no evidence of apportionment. Hendry, the other party represented, would

47

have required at least ninety percent of the same services (motions, appearances, etc.), if not all. It would be unjust to let a sanction stand that covers his legal fees simply because they had the same counsel. Further, the testimony on the stand contradicted itself and shows all fees were attributable to Hendry, not Smith. In sum, the sanction should not have been levied and it is definitely excessive. As such, it should be set aside.

## Point of Error Seven

**Point of Error: The district court committed error which caused the rendition of an improper order when it entered a judgment for attorneys' fees without proper segregation or support and which contradicts case law requiring trial on whether the attorney's fees are reasonable and necessary**.

TGE and CSB are not entitled to the amount of attorney fees claimed, if entitled to any fees at all. A party seeking recovery of attorney fees has the burden to show that the claim is one for which attorney fees are permitted and that the fees were incurred against the particular defendant sought to be charged. *Koch Oil Co. v. Wilber*, 895 S.W.2d 854, 867 (Tex. App.—Beaumont 1995, writ denied). In this case, they did not show proof that they properly segregated the attorney fees incurred in this dispute. CRII 2696-2873. When a case involves more than one claim, fees may be recovered only for those claims falling within the statute or contract. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310-11 (Tex. 2006); *AU Pharm., Inc. v.*

*Boston*, 986 S.W.2d 331, 336 (Tex. App.—Texarkana 1999, no pet.). Here, there were multiple claims and causes of action and Appellees did not identify or attempt to identify which fees were applicable to which cause of action, which party or anything. Also, when a plaintiff seeks to charge multiple defendants with liability in one suit, the plaintiff must segregate the fees so defendants are charged only for the fees for which they are responsible. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10-11 (Tex. 1991), *modified on other grounds, Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299 (Tex. 2006). Here, there is no division of claims and no division of Defendants. Id. In fact, there is no explanation as to how the claimed number was determined. Id. Instead, they claim they believe it is reasonable – with no explanation. Such a claim with no explanation or division is simply not proper.

Their request for attorney fees in the event of appeal fail for the same reason. No division of claims or people and no explanation as to why such a number is reasonable. If one cause of action is remanded, then the fees must be set aside because it is impossible to tell which applies. This same argument is why the fees should just be set aside – you cannot tell what they were awarded for or why. Appellants objected to the affidavits because they are insufficient as a matter of law. They simply cannot say it is reasonable in a self serving manner without explanation.

Attorney Fees Prohibited:  Case law directly on point concludes attorney fees are not proper in this situation:

> Section 37.009 provides that "the court may award costs and reasonable and necessary attorney's fees as are equitable and just" in a declaratory judgment proceeding. Pursuant to Section 37.009, the judge is to determine whether an award of attorney's fees is equitable and just; however, even when declaratory relief has been determined by summary judgment, the issue of whether attorney's fees are reasonable and necessary is a question of fact for the jury to determine when the jury is the trier of fact. *City of Garland v. Dallas Morning News,* 22 S.W.3d 351, 367 (Tex. 2000); *Bocquet v. Herring*, 972 S.W.2d 19, 20-21 (Tex. 1998).

*Fuqua v. Oncor Elec. Delivery Co.*, 315 S.W.3d 552, 2010 Tex. App. LEXIS 2323 (Tex. App. Eastland 2010).  Thus, no attorney fees should be granted without a trial in this situation.  Thus, all attorney fees should be set aside.

## **PRAYER**

Appellants, D & R Constructors, Inc. ("D&R"), George W. Gore and Michael Rushing, Stephanie Rushing, Penn Rushing and Florence Rushing ("Appellants"), pray that the orders and judgment entered against Appellants from Cause No. 2013-00543, *Texas Gulf Energy, Inc. on Behalf of CS Bankers V, LLC and Texas Gulf Fabricators v. Michael Rushing, Stephanie Rushing, Penn Rushing and Florence Rushing*, in the 270th District Court of Harris County, Texas, be set aside (including all summary judgment orders, the final order including attorney's fees, and the sanctions order), that judgment be rendered in favor of Appellants on the issues of

50

foreclosure and quiet title, and, that the remaining causes of action be remanded to the

Trial Court with instructions to enter a new docket control order allowing a discovery

period of at least five months on the remaining causes of action before trial.

Respectfully submitted,

**THE GORE LAW FIRM, P.C.**

By:___/s/ George W. Gore____
George W. Gore
State Bar No. 24029582
6200 Savoy, Suite 1150
Houston, Texas 77036
(713) 224-2000
(713) 224-2004

## APPENDIX

A.    Orders: <u>August 28, 2014</u>; Order titled – CS Bankers' Partial Summary Judgment on Foreclosure; Doc # 62235529:  CRI 593

B.    <u>October 31, 2014</u>;  Order titled - Final Summary Judgment; Doc # 63014312 (Smith);  CRI 1580

C.    <u>November 14, 2014</u>; Order titled – Order Granting Joint Motion for Entry of Supplemental Order; Doc # 63213850:  CRII 1944

D.    <u>November 19, 2014</u>; Order titled - Final Summary Judgment; Doc # 63290903 (Hendry & TGF) :  CRII 1946

E.    <u>December 17, 2014</u>; Order titled – Order Granting Texas Gulf Energy, Inc.'s Motion for Partial Summary Judgment on the "Letter of Intent"; Doc # 63638422: CRII 1972

F.    <u>February 3, 2015</u>; Order titled - Final Summary Judgment; Doc # 64155446: CRII 2027

G.    <u>February 3, 2015</u>; Order titled – Order Assessing Sanctions; Doc # 64155445:  CRII 2025

H.    <u>April 6, 2016</u>;  Order denying  – Order Denying Appellants' Motion for Summary Judgment:  CRI 976

I.    <u>April 13, 2015</u>; Order titled – Final Judgment;  Doc# 65332341:  CRI 977

J.    Appellee Summary Judgment Evidence:  Posting Notice Letter

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been served upon all counsel of record, *via* hand delivery, facsimile and/or electronic service, on this 5th day of October, 2015:

Gary Jewell
Adam L. Tepper
CHRISTIAN, SMITH & JEWELL, LLP
2302 Fannin, Suite 500
Houston, Texas 77002
713.659.7617 (telephone)
713.659.7641 (facsimile)

Paul J Dobrowski
Cody Stafford
DOBROWSKI, LARKIN & JOHNSON, LLP
4601 Washington Ave, Suite 300
Houston, Texas 77007
T (713)659-2900
F (713)659-2908

By: */s/George W. Gore*
George W. Gore

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief is under 15,000 words. The number is 14,753.

By: */s/George W. Gore*
George W. Gore